**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Cr. No. 05-011S** |
| **VS.** | ) | |
| | ) | |
| **ANTHONY LIPSCOMB** | ) | |

**UNITED STATES' TRIAL MEMORANDUM**

I. The Indictment

The indictment charges Anthony Lipscomb with possessing with intent to distribute more than five grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count I); possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count II); and, possessing a firearm after having been previously convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g) (Count III).

II. Factual Summary

After Providence Police Detective Scott Partridge received information from previously reliable and confidential source in December 2004 about the defendant's alleged drug dealing activities, members of the Providence Police Department began conducting surveillance on 286 Chad Brown Street, Apt. B. The surveillance officers observed, on several occasions, the defendant and an unknown female, later identified as Chanel Isom,

exiting from the front door of that unit and the defendant operating a green Jaguar.

Members of the Providence Police Department again set up surveillance of 286 Chad Brown Street at 11:45am on December 30. On this occasion, the officers observed the green Jaguar stop in front of 286 Chad Brown Street. Chanel Isom then got into the vehicle and the Jaguar pulled away. The officers followed the green Jaguar to 334 Carpenter Street, Providence, Rhode Island, where they observed the defendant exit from the vehicle.

As Providence Police Detective Joseph Colanduono exited his vehicle and began to approach the defendant, he identified himself as a police officer. The defendant responded by turning away from Detective Colanduono and walking into the auto repair lot located at 334 Carpenter Street. Detective Colanduono called to the defendant to stop, but the defendant did not comply with that request. Instead, the defendant reached into his right jacket pocket, removed and discarded a plastic bag, and then ran towards the garage area of the business. While Detective Colanduono gave chase to the defendant, Detective Partridge recovered the plastic bag, which contained what appeared to be crack cocaine.

During the ensuing foot chase, Detective Colanduono was able to briefly grab hold of the defendant. The defendant then removed a black handgun from his waistband and threw it under a

parked vehicle. At that point the defendant was able to break free of Detective Colanduono's grasp and began to run towards the entrance to the business. Detective Colanduono quickly recovered the handgun, later identified as a loaded 9mm Keltec semi-automatic pistol, and continued his pursuit of the defendant. After catching up to and engaging in a violent struggle with the defendant, Detective Colanduono and other officers finally apprehended him and took him into police custody. The defendant was then transported to Roger Williams Hospital for medical treatment, where Providence Police Detective Zeitountzian seized $1471 in United States currency from the defendant's person.

Following the defendant's arrest, Detective Partridge spoke to Chanel Isom and received her consent to search the residence at 286B Chad Brown Street. Detectives Partridge and Colanduono responded to that address and conducted a search of the premises. The detectives located and seized several items in a second floor bedroom; including a bag of suspected marijuana, a box of sandwich bags, a photograph of the defendant, a box of 9mm ammunition and a gun lock.

Upon return to the police station, Providence Police Detective William Dwyer performed field tests on the suspected crack cocaine discarded by the defendant and the suspected marijuana found at 286B Chad Brown Street. Those tests resulted in positive indications for the presence of cocaine and

marijuana. Detective Dwyer also weighed the suspected crack cocaine, determining that its gross weight was approximately 40 grams.

The Providence Police Department subsequently submitted the suspected crack cocaine to the Rhode Island Forensic Science Laboratory for further analysis. On February 2, 2005, Senior Forensic Scientist Paul Breault issued a report confirming that the substance was in fact cocaine base with a total net weight of 35.59 grams.

Detectives Colanduono and Partridge both had an opportunity to examine the suspected crack cocaine seized by Detective Partridge. Based upon their experience and training as narcotics investigators, Detectives Colanduono and Partridge determined that the substance appeared to be cocaine base in the form of crack cocaine. They further concluded that the possession of that quantity of cocaine base was consistent with the intent to distribute, and not personal use.

## III. Legal Issues

### A. Elements of the Offenses

Count I:

To establish a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), the government must prove the following elements:

(1) that the defendant knowingly and intentionally possessed

more than five grams of a mixture and substance containing a detectable amount of cocaine base (either actually or constructively);

(2) that he did so with the specific intent to distribute the cocaine base over which he had actual or constructive possession; and,

(3) that the defendant did so knowingly and intentionally. 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). See First Circuit Pattern Jury Instructions, §4.22.

Count II:

To establish a violation of 18 U.S.C. § 924(c)(1)(A), the government must prove the following elements:

(1) that the defendant committed a drug trafficking offense;

(2) that the defendant knowingly and intentionally possessed a firearm (either actual or constructive possession); and,

(3) that the defendant possessed the firearm in furtherance of that drug trafficking offense.

18 U.S.C. §924(c)(1)(A). See First Circuit Pattern Jury Instructions, §4.07.

Count III:

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove the following elements:

(1) that the defendant has been convicted in any court of at least one crime punishable by imprisonment for a term exceeding

one year;

(2) that the defendant knowingly possessed the firearm described in the indictment; and,

(3) that the firearm was connected with interstate commerce. 18 U.S.C. § 922(g)(1). See First Circuit Pattern Jury Instructions, §4.06.

B. Possession

The defendant is likely to contest possession of the items seized by the police after he discarded them. To prove possession of an object, the government must prove either actual or constructive possession. United States v. Barnes, 890 F.2d 545, 549 (1st Cir. 1989); United States v. Edwards, 602 F.2d 458, 470 (1st Cir. 1979). That possession may also be sole or joint. United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994).

In order to establish actual possession, the government must show that the defendant had "immediate, hands-on physical possession" of the object. United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994). If, however, the government relies on a theory of constructive possession, it need only prove that the defendant had the power and intention at a given time to exercise dominion and control over the object, either directly or through others. United States v. Nieves-Burgos, 62 F.3d 431, 437-38 (1st Cir. 1995); United States v. Garcia, 983 F.2d 1160, 1164 (1st Cir. 1993).

Constructive possession may be proved by either direct or circumstantial evidence. Barnes 890 F.2d at 549. Therefore, knowledge of the item may be inferred by demonstrating dominion and control over the area where the contraband was found. United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997); Barnes 890 F.2d at 549; United States v. Lochan, 674 F.2d 960, 966 (1st Cir. 1982).

C. In Furtherance of a Drug Trafficking Offense

The defendant may contest the government's allegation that he possessed the firearm in furtherance of a drug trafficking offense. In order to prove that element, the government must establish that the possession of the firearm furthered, advanced or helped forward the drug trafficking offense. United States v. Ceballos-Torres, 218 F.3d 409, 410, 414-15 (5th Cir. 2000). The possession may further, advance or help such an offense by protecting the drugs or money against robbery, preventing encroachment into a person's territory by rival dealers, providing a means to enforce payment for drug debts, or serving as a mechanism for retaliation. United States v. Luciano, 329 F.3d 1, 6 (1st Cir. 2003); United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003). Some factors that may help determine whether a particular defendant's possession of a firearm furthers, advances or helps forward the a drug trafficking offense include the type of drug activity that is being conducted, the

accessibility of the firearm, the type of firearm, whether the firearm is loaded, the proximity of the firearm to the drugs, and the time and circumstances under which the gun is found. Ceballos-Torres, 218 F.3d at 414-15.

D. Opinion Evidence Regarding the Drug Exhibits

In addition to offering the expert testimony of the state lab chemist who tested the controlled substance exhibit in this case, the government will offer the testimony of Providence Police Detectives Colanduono and Partridge, who will testify, based on their extensive experience and training, that the quantity of drugs seized from the defendant is consistent with distribution, and not personal use.

An expert can testify to an opinion if it will assist the trier of fact to understand evidence or determine a fact in issue. F.R.E. 702. The admission of such testimony is within the discretion of the trial judge. United States v. Montas, 41 F.3d 775, 784 (1st Cir. 1994). In drug cases, matters of dosages, prices, packaging, and other particulars endemic to the distribution of controlled substances are beyond the ken of the average juror. United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995). Testimony as to the street value of a controlled substance is relevant to proving an intent to distribute a controlled substance. United States v. Rivera, 68 F.3d 5, 8 (1st Cir. 1995). Furthermore, testimony as to the amount of a

controlled substance that users as opposed to distributors carry, street and wholesale value of that controlled substance, and the effects of an individual dose is within the ken of expert testimony. Valle, 72 F.3d 214-15. Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

Finally, an experienced narcotics investigator may be allowed to testify that a particular substance is in the form of cocaine base known on the streets as "crack" cocaine. United States v. Robinson, 144 F.3d 104, 109 (1st Cir. 1998). Once the government introduces evidence regarding the chemical analysis, competent lay testimony remarking on the substance's distinctive appearance and texture, as well as identifying it as crack, is both admissible and sufficient to prove that the substance is crack cocaine. United States v. Richardson, 225 F.3d 46, 50 (1st Cir. 2000); United States v. Ferreras, 192 F.3d 5, 11 (1st Cir. 1999); United States v. Martinez, 144 F.3d 189, 190 (1st Cir. 1998). Therefore, the government need not introduce any evidence regarding the water solubility and/or melting point in order to sustain its burden of proof on this point. United States v.

Charles, 213 F.3d 10, 24-25 (1st Cir. 2000).

E. Fingerprint Evidence

The government intends to offer the testimony of Providence Police Detective Robert Yekelchik regarding the processing of the firearm for fingerprints. Testimony regarding the manner in which objects are examined for fingerprints, the methods by which fingerprints are recovered, and the factors which result in, or prevent, the leaving of fingerprints on objects is routinely admitted by this and other circuits. See e.g., United States v. Benedetti (Torres, C.J.); United States v. Sabetta, Cr. No. 00-135L (Lagueax, J.); United States v. Velasquez, Cr. No. 03-005S (Smith, J.); United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998) (expert testimony admissible on frequency with which fingerprints are recovered from plastic bags); United States v. Burdeau, 168 F.3d 352, 356-57 (9th Cir. 1999)(testimony "that identifiable fingerprints are almost never found on guns and only rarely found on other objects submitted for testing" properly admitted); United States v. Thomas, 864 F.2d 843, 847-48 (D.C. Cir. 1989) (testimony concerning "the inherent difficulty of obtaining fingerprint evidence from the surfaces of the items seized" properly admitted where defendant suggested lack of fingerprint evidence is exculpatory).

IV. Requested Voir Dire

The government submitted its proposed voir dire under separate cover.

V. Jury Instructions

The government will submit proposed jury instructions under separate cover.

VI. Exhibit List

The government will submit an exhibit list under separate cover prior to the commencement of trial.

VII. Estimated Time of Trial

The government estimates that it will take three to four days to conduct the trial.

RESPECTFULLY SUBMITTED,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

STEPHEN G. DAMBRUCH
Assistant U. S. Attorney

Certificate of Service

I hereby certify that on the 19th day of July, 2005, a copy of the within United States' Trial Memorandum was mailed to Edward C. Roy, Assistant Federal Defender, 10 Weybosset Street, Suite 300, Providence, RI 02903.