UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. CR. No. 05-11S

ANTHONY LIPSCOMB

# §3553 - SENTENCING MEMORANDUM

1. Challenge to Mandatory Minimum.

Defendant Anthony Lipscomb, a twenty seven-year-old man is facing a mandatory sentence of at least ten years in prison together with a follow on five year sentence pursuant to 18 U.S.C. §924(c)(1)(A). This mandatory ten year sentence is a result of his conviction under 21 U.S.C. § 841((a)(1) and (b)(1)(B) and the prosecution's pre-trial filing of an information under 21 U.S.C. § 851 concerning Mr. Lipscomb's prior conviction. The current matter involved an intent to distribute a total of 35.59 grams – or 1.26 ounces – of cocaine base. The predicate case involved a small quantity not even seized from the defendant's person, to wit his underwear until he was in the cell block. *See* Presentence Investigation Report ("PSI") at ¶¶ 37 (prior conviction). Nevertheless under the circumstances, the Court has no choice but to send Mr. Lipscomb to prison for ten years and is barred from considering in its discretion a sentence different from the calculated guideline due to the circumstances and facts of the case. Discretion specifically recognized in *United States v. Pho* 433 F.3d 53 (1st Cir. 2006). It is respectfully submit

any such sentence imposed here would be unconstitutional. Four separate grounds are suggested, as follows:

(1) The prosecution's filing of an information under 21 U.S.C. § 851, which rendered Mr. Lipscomb "eligible" for a mandatory ten year sentence, and the prosecution's continued pursuit of a ten year sentence have penalized Mr. Lipscomb for his decision to exercise his Sixth Amendment right to trial by jury;

(2) The vesting of sole discretion in the prosecution under § 851 as to the decision to use Mr. Lipscomb's prior convictions to enhance his sentence violates the separation of powers doctrine;

(3) The removal of any discretion from the Court to consider Mr. Lipscomb's background, the nature of his prior offenses, and the circumstances of this offense, deprives Mr. Lipscomb of his Fifth Amendment due process right to an individualized sentencing determination; and

(4) The fact that Mr. Lipscomb prior conviction were not proven to a jury beyond a reasonable doubt precludes their use for the purpose of enhancing Mr. Lipscomb's sentence outside of the otherwise applicable sentencing range.[1]

In raising these arguments, we ask the Court to recognize the increasing ineffectiveness, inflexibility, and harshness of federal sentencing mandatory minimums. Importantly,we are not

asking the Court to step beyond its judicial role and legislate new policy. Rather the request is believed based solidly on legal principles including: the right to a trial by jury, the right to due process, and the separation of powers. These are core principles. As is demonstrated below, application of these core principles prevents imposition of a ten year mandatory sentence in this case.

BACKGROUND

A. Relevant Factual and Procedural Background

On January 18, 2005, Mr. Lipscomb was arrested by state and federal law enforcement officers conducting surveillance of a narcotics transaction involving crack cocaine on a criminal complaint and warrant issue January 14, 2005. The case persisted in the system through the discovery period and the usual time when defendant's determine whether they will enter a guilty plea usually through some beneficial plea agreement. Here after that thirty day period on February 18, 2005 the government filed its Information pursuant to §851. That section provides that for any defendant in a narcotics case facing an enhanced punishment "by reason of one or more prior convictions," such an enhanced sentence will only be imposed if "the United States attorney files an information with the court…stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). The information identified one

[1] As described below we acknowledge that present law appears to continue to foreclose

prior felony drug conviction against Mr. Lipscomb. Because Mr. Lipscomb was charged in the instant indictment with a violation of 21 U.S.C. § 841(b)(1)(B) (more than 5 grams of cocaine base ), the government's filing of the § 851 information brought into play the following language in § 841(b)(1)(A): "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment_…."

B. Upheaval in Federal Sentencing Law

When the Court imposes its sentence on Mr. Lipscomb, it will do so at a time of great uncertainty in the law. As the Court knows, recent developments have raised doubts about the prevailing sentencing practices during the past two decades.

The central focus of federal sentencing policy since the early 1980s has been to limit judges' discretion in imposing sentences. Congress has accomplished this through, for example, the Sentencing Reform Act of 1984, which led to the promulgation of the United States Sentencing Guidelines. Likewise, Congress has enacted numerous mandatory minimum sentences, particularly related to drug crimes, which have resulted in enhanced sentences based on drug quantities and, as in this case, prior convictions. These policies have led to the near-total vesting of sentencing discretion in the prosecutors who decide what crimes to charge.

this claim. We brief the issue, however, in order to preserve it for Mr. Lipscomb.

Sentences have grown longer, and judges have effectively been taken out of the calculus until the Supreme Court's ruling in Booker[2].

Indeed, critiques of federal sentencing were initiated by Supreme Court Justice Anthony M. Kennedy, who, in an August 9, 2003, address to the American Bar Association, "raised fundamental questions about the fairness, wisdom and efficacy of criminal punishment throughout the United States." American Bar Association Justice Kennedy Commission, Report to the House of Delegates, Res. 121A: Recommendations on Punishment, Incarceration, and Sentencing, at 3 (Aug. 2004), *available at*, http://www.abanet.org/media/kencomm/rep121a.pdf ("ABA Report"). Justice Kennedy's critiques of sentencing policy were wide-ranging. He called attention to the problems of lengthy sentences of incarceration, *id.* at 4 ("When it costs so much more to incarcerate a prisoner than to educate a child, we should take special care to ensure that we are not incarcerating too many persons for too long."), called for the return of judicial discretion in sentencing, *id.* at 5 ("The trial judge is the one actor in the system most experienced with exercising discretion in a transparent, open, and reasoned way. Most of the sentencing discretion should be with the judge, not the prosecutors."), and expressly rejected the rationale behind mandatory minimum sentences, *id.* ("I can accept neither the necessity nor the

[2] United States v. Booker, 543 U.S. 220 (U.S. 2005)

wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise and unjust.”).

At the conclusion of his address, Justice Kennedy asked the ABA “to study these matters, and to help start a new public discussion about the prison system.” *Id.* at 6. The ABA granted Justice Kennedy’s request. It formed the Justice Kennedy Commission, and, after a year of study, in August of 2004, the Commission released four separate resolutions. For purposes of this case, the Commission’s most important contribution was its call for an elimination of mandatory minimum sentences on the grounds that they are “inconsistent with the notion that sentences should consider all of the relevant circumstances of an offense” and that they “tend to shift sentencing discretion away from courts to prosecutors.” *Id.* at 27.

During the one-year period in which the ABA was engaging Justice Kennedy’s call for a “new public discussion” on sentencing, there were several other developments in the criminal justice system raising further doubt as to the validity of current sentencing law. On June 18, 2004, Chief Judge William G. Young of the U.S. District Court for the District of Massachusetts issued a 117-page decision harshly criticizing the Department of Justice for having taken complete control over sentencing decisions in the federal system. *United States v. Green*, 2004 WL 1381101 (D. Mass. June 18, 2004). As Chief Judge

Young explained, federal courts are partly to blame for this phenomenon:

> Against the centrally organized efforts of the Department [of Justice] to manipulate sentences and sentencing policy to achieve the perceived goals of law enforcement, the efforts of individual judges to control the whirlwind have been but a weak reed--unnoticed, derided, and largely rejected. As a result, the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way.

*Id.* at *3.

In addition to criticizing the Department of Justice’s methods to encourage guilty pleas and thereby reduce jury trials, such as “charge bargaining,” *id.* at *7 (describing Department’s dropping of charges to result in lesser sentences and encourage plea bargaining), and “fact bargaining,” *id.* at *9 (describing Department’s willingness to “swallow[] the drugs” or “the gun” to similarly result in lesser sentences and encourage plea bargaining), Chief Judge Young ruled that in the cases before him drug quantities which had not been proven to a jury beyond a reasonable doubt could not be used to enhance the defendants’ sentences under the Guidelines. *Id.* at *17.

Chief Judge Young’s decision in this regard proved prescient, for, less than a week later, on June 24, 2004, the Supreme Court issued its decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which invalidated a Washington state

sentence on the same grounds – that facts determined by a judge under a preponderance of the evidence standard could not, consistent with the Sixth Amendment right to a jury trial, be used to enhance a defendant's sentence above a standard guideline range.

### A. The Government's Conduct in Seeking a Mandatory Minimum Ten Year Sentence Has Penalized Mr. Lipscomb For His Decision to go to Trial And Has Thus Violated His Sixth Amendment Right to a Jury Trial.

We argue here that the prosecutor has a lever to hold over a defendant who chooses to go to trial. Here though no plea agreement was arrived at the prosecutor filed the §851 enhancement against this defendant in a case involving little more than 1.26 ounces of crack cocaine. Here absolute discretion exists in the prosecutor to determine who gets a ten year sentence in these types of circumstances and they can bargain or not as they see fit.

The problems with § 851 are not limited to a local situation but are noted nationally. As noted by Chief Judge Young in *Green*, the misuse of sentencing enhancements under provisions like § 851 is common in the federal system. "Departmental attorneys are…able to threaten to give such notice – therefore ratcheting up sentences in applicable cases – whenever an accused proves recalcitrant about copping a plea. Make no mistake – this happens." *Green*, 2004 WL 1381101, at *7. Prosecutors have

complete discretion over the filing of the § 851 information. They are free to “swallow” the prior convictions, and, if they do not file the information, the Court is precluded from applying a statutory sentencing enhancement based on prior convictions. Nationally naturally, a promise to “swallow” prior convictions which could lead to steep increases in a defendant’s sentencing exposure is a powerful tool to compel a defendant to plead guilty and/or cooperate with the government. When the converse occurs, and a defendant exercises a constitutional right, and, in the process, defies the government’s wishes for cooperation or a guilty plea which would prevent the necessity of a trial, naturally, the incentive for the government to *not* “swallow” the prior convictions and pursue the sentencing enhancement grows. In short, the built-in incentives of federal sentencing law, through provisions such as § 851 and 18 U.S.C. § 3553(e) demand that prosecutors penalize a defendant’s exercise of a constitutional right, and defendants pay dearly for this penalty. *See Green*, 2004 WL 1381101, at *11 n.93 (citing *Berthoff v. United States*, 140 F. Supp. 2d 50, 67-68 & n.33 (D. Mass. 2001)) (“As of 1999, there was a 500 percent differential in punishment between those who exercised their rights and those who waived them and cooperated.”).

Mr. Lipscomb’s decision to go to trial where he was convicted now brings the stark reality of the mandatory penalty. The filing of the § 851 information thirty days after the arrest

may have a prosecution decision in this case but it is submitted that these unfettered decisions to deal or not to deal, to file or not to file especially as played out in this case does not appear supported by the quantity or facts. At bottom, regardless of how the government's conduct is characterized, that conduct has served to penalize Mr. Lipscomb for exercising his constitutional right to a jury trial. This conduct should not be permitted, and Mr. Lipscomb should not be subject to a mandatory sentence.

**B. Removing Sentencing Discretion From The Courts and Requiring Imposition of a Mandatory Sentence at The Will of The Prosecutor Violates The Separation of Powers.**

At the outset of the sentencing reform movement in the early 1980s, the Sentencing Guidelines were challenged as delegating legislative authority to an administrative agency (the Sentencing Commission) in violation of the separation of powers doctrine. In *Mistretta v. United States*, 488 U.S. 361 (1989), the Supreme Court rejected this challenge and upheld the constitutionality of the guidelines. It did so, in part, on the ground that the Sentencing Commission had been placed in the judiciary. *Id*. at 390-91. In holding the Guidelines constitutional, however, the Court noted an important caveat: "had Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial

responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch." *Id.* at 391 n.17.

The constitutional questions the Court envisioned in *Mistretta* are now ripe. *See Green*, 2004 WL 1381101, at *31 (noting that *Mistretta* held the Guidelines constitutional, but stating that "it is not clear whether the empirical assumptions on which that holding rested are true today"). Specifically, since *Mistretta*, the growing prevalence of mandatory minimum sentences has united the power of prosecution and sentencing within the Executive Branch.[3]

For example, in 1991, a United States Sentencing Commission report documented that during just a five-year period, the percentage of cases where a defendant's conduct rendered the defendant eligible for a mandatory minimum sentence doubled from 10 to 20 percent. U.S. Sentencing Commission, *Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal*

[3] The recently enacted Feeney Amendment, which provides for various expansions of the limitations on judicial discretion in sentencing and prohibits judicial representatives on the U.S. Sentencing Commission from constituting a majority, has also greatly changed the empirical assumptions underlying the *Mistretta* ruling. *See* *United States v. Detwiler*, 2004 WL 2244532, at *10-11 (D. Or. Oct. 5, 2004) (finding Guidelines, as amended by Feeney Amendment, unconstitutional for concentrating sentencing power in the executive branch and stating that "[f]or too long, the Judicial Branch has remained silent in the face of repeated encroachments by the other two Branches"); *Green*, 2004 WL 1381101, at *12 ("The stark facts of the passage of the Feeney Amendment sadly demonstrate that today the district court judiciary is nothing more than a nuisance to the Departmental drive to control all aspects of sentencing."); *United States v. Mendoza*, 2004 WL 1191118, at *7 (C.D. Cal. Jan. 12, 2004) (holding Feeney Amendment requirement of reporting departure information to Department of Justice was an unconstitutional "power grab by one branch of government over another branch").

*Justice System*, at 38 (Aug. 1991).[4] Moreover, the report showed that in those cases where a defendant was eligible for a mandatory minimum sentence as a result of prior convictions, prosecutors exercised their discretion to *not* seek the enhanced sentence in 63% of such cases. *Id.* at 43. Thus, in the cases studied by the Sentencing Commission, the question whether a defendant in the position of Mr. Lipscomb would face a sentencing enhancement based on prior convictions was answered at the whim of the prosecutor.

The cases underlying the Sentencing Commission's conclusions are somewhat dated. But, as numerous jurists have recognized, the executive branch continues to maintain authority over sentencing to the exclusion of the judiciary in the mandatory minimum arena. *See* ABA Report at 5 (noting Justice Kennedy's statement that "[u]nder the federal mandatory minimum statutes a sentence can be mitigated by a prosecutorial decision not to charge certain counts"); *Green*, 2004 WL 1381101, at *32 ("It may be that, taken together, the ways in which the Guidelines regime have transferred the power of sentencing to the Department add up to a joining of the power to prosecute and the power to sentence in one branch of government."); *United States v. Dyck*, 287 F. Supp. 2d 1016, 1019, 1022 (D.N.D. 2003) (stating that "[t]he advent of mandatory minimum sentences…divest sentencing

---

[4] The report is available at http://www.ussc.gov/r_congress/MANMIN.PDF.

discretion away from the sentencing judge" and that "[j]udges and others involved in the criminal justice system must speak out against unjust and unwise mechanisms of justice such as…mandatory minimum sentences"); *United States v. Sidhom*, 144 F. Supp. 2d 41, 41 (D. Mass. 2001) (Harrington, S.J.) ("[T]he government, not only has the authority to prosecute crime and to decide the nature of the criminal charge to be preferred, but now has the power to determine the severity of the punishment. As a result, courts are required to react passively as automatons and to impose a sentence which the judge may personally deem unjust."); *cf.* Associated Press, *Federal Judge Resigns, Calling Judicial System Unjust* (June 25, 2003), *available at*, http://www.famm.org/si_federal_sentencing_judge_martinoped_06_24_03.htm (reporting comments of retiring Judge Martin of the Southern District of New York that "Congress is mandating things simply because they want to show how tough they are on crime with no sense of whether this makes sense or is meaningful").

"In the long tradition of the common law, it was the judge, the neutral arbiter, who possessed the authority to impose sentences which [s]he deemed just within broad perimeters established by the legislature." *Sidhom*, 144 F. Supp. 2d at 41. This principle, with limitations, has been endorsed under our constitutional system, but, as a functional matter, it is completely eroded. This case is yet another example of the

executive branch usurping the Court's sentencing authority. Upon the filing of the § 851 information in this case, the Court's role with respect to sentencing was short circuited at the ten year level. The prosecutor has chosen what charges to file and decided what minimum sentence to impose. This violates the separation of powers doctrine as contemplated by the Supreme Court in *Mistretta*, and the sentence should therefore be barred.

### C. The Elimination of The Court's Ability to Make an Individualized Determination as to Mr. Lipscomb's Sentence Violates His Right to Due Process.

Just sentencing has traditionally contemplated an individualized consideration of the circumstances in each case. "It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion." *Burns v. United States*, 287 U.S. 216, 220 (1932). Such individualized treatment is a fundamental liberty interest. *See Dyck*, 287 F. Supp. 2d at 1021 (stating that "[t]he concept of individualized sentencing is deeply rooted in our legal tradition and is a fundamental liberty interest" and collecting cases in support of that principle). Accordingly, a "due process right arises at sentencing because sentencing involves the most extreme deprivation of personal liberty." *Id.*

The individualized determination that is constitutionally required for sentencing must look to a broad spectrum of factors.

"The fair method of sentencing is for an impartial judge, who is fully cognizant of an individual defendant's personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime, to impose sentence after deep reflection, informed by the judge's experience in life and in the law." *Sidhom*, 144 F. Supp. 2d at 41-42; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender."); *United States v. Tannis*, 942 F.2d 196, 198 (3d Cir. 1991) (Higginbotham, J., concurring) ("Judges and legislators must always remember that ultimately we are not sentencing widgets or robots, but human beings…. [C]onvicted defendants should be sentenced within the spectrum of what most able judges would consider fair and reasonable both for our society and for the sentenced defendant."); *Dyck*, 287 F. Supp. 2d at 1022 n.6 ("The fundamental respect for justice underlying the Fifth Amendment…requires consideration of the character of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of depriving a defendant of his life or liberty."); ABA Report at 27 (recommending that sentencing courts should be permitted to "consider the unique

characteristics of offenses and offenders that may warrant an increase or decrease in a sentence”).

Mandatory minimum sentences remove these core elements of just sentencing from the Court’s consideration. As one court has noted, “[s]tatutory mandatory minimum sentences create injustice because the sentence is determined without looking at the particular defendant.” *United States v. Patillo*, 817 F. Supp. 839, 841 (C.D. Cal. 1993). Under this “sledgehammer approach,” it makes no difference whether the “defendant had rescued fifteen children from a burning building, or had won the Congressional Medal Of Honor while defending his country.” *Id.* at 842; *see also United States v. Langmade*, 125 F. Supp. 2d 373, 374-75 (D. Minn. 2001) (“[M]andatory minimum sentences-almost by definition-prevent the Court from passing judgment in a manner properly tailored to a defendant’s particular circumstances.”).

In this case, in light of the mandatory sentence, the Court is prohibited from considering any number of factors which *should* be relevant to arriving at a just sentence. For example, with respect to Mr. Lipscomb’s offense of conviction and prior convictions, it *should* be relevant to the Court that:

- There are no allegations that Mr. Lipscomb was a drug “kingpin,” in charge of a major narcotics operation. By all accounts, he was alleged to be a street level person.

- Mr. Lipscomb's prior convictions, which are the essential reason for the mandatory minimum sentence, involved intended distribution of what must be a small quantity of cocaine base.

The mandatory minimum sentence violates Mr. Lipscomb's right to due process, and it should not be imposed.

D. Mr. Lipscomb's Prior Convictions Were Not Proven to a Jury Beyond a Reasonable Doubt And May Not be Used to Enhance Mr. Lipscomb's Sentence Beyond The Otherwise Applicable Range.

It is our position, then, that because the prior convictions were not proven to a jury beyond a reasonable doubt, under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), they may not be used to so enhance the sentence. We acknowledge, however, that in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998), a five-member majority of the Supreme Court held that prior convictions which enhance a sentence need not be charged in the indictment and proven to a jury beyond a reasonable doubt, and that this holding was preserved in both *Apprendi* and *Blakely*. *See Blakely*, 124 S. Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The exception for prior convictions, however, has been called into question as a result of Justice

Thomas' concurring opinion in *Apprendi*, which stated that *Almendarez-Torres* may have been erroneously decided. *Apprendi*, 530 U.S. at 518-22 (Thomas, J., concurring). With Justice Thomas, who was in the majority in *Almendarez-Torres*, changing his view on this issue, and new members of the Court it is believed the issue ought to be preserved. Thus, although the prior conviction exception remains good law post-*Apprendi*, *see United States v. Stubbs*, 281 F.3d 109, 123 n.12 (3d Cir. 2002), and post-*Blakely*, *see*, *e.g.*, *United States v. Marseille*, 377 F.3d 1249, 1257 n.14 (11th Cir. 2004), we raise this issue in the event the Supreme Court should resolve it favorably to Mr. Lipscomb.

2. Crack v. Cocaine

The defendant is before the court for sentencing. 18 U.S.C. § 3553(a): "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

Defendant objects to the calculation of the applicable offense level due to the use of the cocaine base factor. While the Court in *United States v. Ph*o 433 F.3d 53 (1st Cir. 2006)held:

> The clear import of [the SRA's] statutory framework is to preserve Congress's authority over sentencing policy and to guarantee that the exercise of judicial discretion over sentencing decisions be based on case-specific circumstances, not on general, across-the-board policy considerations.
>
> Nothing in *Booker* altered this distribution of authority over sentencing policy. *Booker* established that a district court may exercise discretion in fashioning sentences — but that discretion was meant to operate only within the ambit of the individualized factors spelled out in section 3553(a).
>
> The decision to employ a 100:1 crack-to-powder ratio rather than a 20:1 ratio, a 5:1 ratio, or a 1:1 ratio

> is a policy judgment, pure and simple. After all, Congress incorporated the 100:1 ratio in the statutory scheme, rejected the Sentencing Commission's 1995 proposal to rid the guidelines of it, and failed to adopt any of the Commission's subsequent recommendations for easing the differential between crack and powdered cocaine. It follows inexorably that the district court's categorical rejection of the 100:1 ratio impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses.

Nationally the decision in *Pho* may not be the end of the debate on the Crack/Cocaine and remains in many minds is questionable in light of the commands of 3553(a) and *Booker*. It remains difficult to see what is "unreasonable" about a sentencing court's decision to follow the US Sentencing Commission's forceful and unanimous declaration that an alternative crack/powder ratio of 20:1 would better serve congressional goals than the 100:1 ratio. (This Court did just that in *United States v. Perry 389 F. Supp. 2d 278 (2005)* The key point remaining absolutely clear after Pho is that the District Court retains its critical post-*Booker* authority to refuse to follow the crack guidelines. The clear import of Pho is that the Court ought to articulate their reasons for rejecting the crack penalty levels without creating and applying an "alternative guideline" system.

Given this Court's reasoned holding in Perry it appears such an approach provides a effective and useful vehicle to avoid the stated short comings of the 100:1 ratio. Defendant seeks such consideration hear. It should be sufficient for this Court to find that this case before me evidences all the concerns stressed by the USSC when explaining the ways in which the 100:1 ratio undermines congressional sentencing goals – e.g., this particular crack offense was not accompanied by serious violence, and the amount of drugs involved do not suggest that this offense is likely to produce community harms that are as great as would 100 times more powder cocaine. Therefore based on the facts of this cases and the mandates of 3553(a), I will not follow the crack guidelines in this case. To do less it seems flys in the face of the reasoning and import of Perry. It is submitted here that an appropriate sentencing range would be found at offense level 12, subject to the statutory minimum five year penalty raising a otherwise 21-27 month penalty to 60 months.

3. Criminal History Overrepresented.

Here defendant has objected to paragraph 42 action of pushing defendant into criminal history category IV. It is respectfully submitted that overrepresents the history. Defendant had finished his probationary sentence in the case

that invoked the two point increase. To enhance in this federal matter on such a prior case seems undue given the successful completion of probation. This court has ample discretion to adjust for criminal history overrepresentation. In **U.S. v. Thomas**, 361 F.3d 653 (D.C. Cir. 2004) (district court erred in considering the defendant's lengthy arrest record in justifying court's failure to depart downward because of overrepresentation of criminal history; arrests prove nothing); U.S. v. Cuevas-Gomez, 61 F.3d 749 (9th Cir. 1995) (district court may depart downward in illegal reentry case where D received 16-level upward adjustment in offense level – if court believes criminal history overstated); U.S. v. Reyes, 8 F.3d 1379 (9th Cir. 1993) (court upholds downward departure – 210 months to 33 months – from career offender guidelines – in both offense level and criminal category – where defendant a comparatively minor offender – 6 minor drug and theft priors – but remands for court to state reason for extent of departure); U.S. v. Brown, 985 F.2d 478, 482 (9th Cir. 1993) (age at time of prior convictions and nature of those convictions – DUIs – are proper factors to consider in determining whether career offender status significantly over-represents seriousness of defendant's criminal history); U.S. v. Lawrence, 916 F.2d 553, 554 (9th Cir. 1990) (even though defendant is career offender because of

two drug convictions, low risk of recidivism justifies downward departure); U.S. v. Mishoe, 241 F.3d 214 (2d Cir. 2001) (although reversing district court's grant of downward departure because they should not automatically be given to street level dealers; horizontal departure in criminal category may be warranted where prior sentences were lenient); U.S. v. Gregor, 339 F.3d 666 (8th Cir. 2003)(in departing downward because career offender designation overrepresents criminal history because burglary did not involve breaking and entering, district court may shift left on the criminal history category **and** move downward on the offense level); U.S. v. Collins, 122 F.3d 1297 (10th Cir. 1997) (departure from career offender 151-188 to 42 months o.k. where D was 65 and ill (high blood pressure, heart disease, ulcers, etc) and 10 year old conviction overstated criminal history because conduct committed beyond ten-year limit; and D not sentenced in that case until 15 months after crime committed – so district court correctly reasoned that quick prosecution would have precluded the career offender enhancement altogether – other conviction was minor drug charge for which D received lenient sentence – so D "not as likely to recidivate as other career offenders" – and because Koon makes clear that Congress did not intend "to vest in appellate courts wide-ranging authority over district court sentencing decisions"); U.S. v. Fletcher, 15

F.3d 553, 557 (6th Cir. 1994) (affirming departure downward from career offender to level 29 and category V based on age of prior convictions, time intervening between priors and current crime, and defendant's responsibilities; court of appeals affirmed noting district court can consider age of priors in determining recidivism); U.S. v. Gayles, 1 F.3d 735, 739 (8th Cir. 1993) (case remanded to permit judge to consider downward departure, noting that in making determination, judge must "consider the historical facts of the defendant's criminal career"); U.S. v. Shoupe, 988 F.2d 440, 447 (3d Cir. 1993) (court may consider defendant's age and immaturity when priors committed in determining that criminal history (career offender) over represents history); U.S. v. Bowser, 941 F.2d 1019, 1024 (10th Cir. 1991) (age and close proximity in time between prior criminal acts provided proper bases to depart downward from career offender category); U.S. v. Senior, 935 F.2d 149, 151 (8th Cir. 1991) (defendant only 20 years old when he committed his first predicate offense, a series of robberies, and D received short sentence for second predicate offense drug charges, obvious state did not consider D's crimes serious; so downward departure proper); U.S. v. Summers, 893 F.2d 63, 67 (4th Cir. 1990) (affirms downward departure because drunk driving crimes exaggerated criminal history but remands because of the extent of the departure).

United States v. Huerta-Rodriguez, ___ F. Supp. 2d ____, 2005 WL 318640, 2005 U.S. Dist. LEXIS 1398 (D. Neb. Feb. 1, 2005) (Bataillon, J.) (post Booker, where guideline range was 70-87 months court imposed 36 months in part because court would have granted downward departure for over-representation of criminal history in that prior occurred nearly ten years ago); U.S. v. Hammond, 240 F. Supp.2d 872 (E.D. Wisc. 2003) (in granting departure from category III to II, because criminal history is overstated, court may consider (1) the age of the priors, (2) the defendant's age at time of the priors, (3) whether drug and alcohol use were involved in the priors, ((4) the circumstances of the prior offenses ; (5) the length of the prior sentences; (6) the circumstances of the defendant's life at the time of the priors, and (7) the proximity of the priors. Here, the priors were relatively minor and remote in time from the instant offense (eighteen and twenty years old) and unrelated to it, and D was young at the time of the priors and was intoxicated at the time.); U.S. v. Moore, 209 F.Supp. 2d 180 (D.D.C. 2002) (departure from range of 188 to 235 to range of 100-125 where career offender status over-represented defendant's criminal history, priors were attempts and involved small quantity of drugs, four years in between commission of previous offenses and instant offense, and relative length and nature of his previous sentences in

comparison with sentence prescribed by the guidelines); U.S. v. Wilkerson, 183 F.Supp.2d 373 (D. Mass. 2002) (where D convicted of distribution of crack, his criminal history score of VI over-represented his criminal culpability for purposes of sentencing, and thus defendant was entitled to a downward departure to IV and (170 to 120 months) where he had no convictions for crimes of violence, and he had received sentences for prior convictions that just barely triggered scoring under the guidelines); U.S. v. Chambers, 2001 WL 96365, *3 (S.D.N.Y. Feb. 2, 2001) (unpublished) (where defendant pled to conspiring to deliver heroin, the four criminal history points calculated in the presentence report overstated the seriousness of D's criminal record. The attempted criminal sale of a controlled substance in the third degree was his first offense, and took place when D was only seventeen years old – so court departs from category III to II); U.S. v. Lacy, 99 F.Supp.2d 108, 119 (D.Mass. 2000) (departing where D's record "largely non-violent, and relatively minor, the kind that characterizes and out-of-control addict); U.S. v. DeJesus, 75 F.Supp. 2d 141, 144 (S.D.N.Y. 1999) (criminal category V over represented D's criminal history where several priors were probation terms and, of three jail sentences, only one longer that 60 days, and two of eight convictions were for loitering and trespassing and did not

count for guideline purposes, and remaining six convictions resulted in no more than 2 years jail, and most conduct committed before D was 21 – and now that D married and father more responsible – "a lengthy sentence required by higher criminal history category will lessen not increase the likelihood of rehabilitation."); U.S v. Hammond, 37 F.Supp.2d 204 (EDNY 1999) (departing from category VI to III where D "had no history violent behavior and his prior arrests resulted from minor drug crimes …and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of drugs."); U.S. v. Leviner, 31 F.Supp.2d 23 (D. Mass. 1998) (category V, based on traffic violations that accounted for 7 criminal history points, over-represented relatively minor and non-violent nature of defendants record and replicated disparities in state sentencing scheme, particularly racial disparities); U.S. v. Miranda, 979 F.Supp. 1040, 1044 (D.N.J. 1997) (discounting traffic convictions "distinct in seriousness and kind from the instant offense"); U.S. v. Taylor, 843 F. Supp. 38 (W.D.Pa. 1993) (downward departure from career offender level 34 to level 20 justified where prior state burglary convictions were more than ten years old and occurred when D a teenager, the crimes did not involve any physical violence or use of a weapon, and burglary spree occurred over a relatively short period); U.S. v. Hinds,

803 F. Supp. 675 (W.D. N.Y. 1992) (in illegal reentry case departure from 51 months to 33 months proper where prior marijuana convictions over represented criminal history and where Commission increased guideline for reentry with aggravated felony), aff'd, 992 F.2d 321 (2d Cir. 1993). In the instant matter a criminal history category reduction given appears warranted.

4. Further §3553 Considerations

In fashioning a sentence that fulfills the purposes of 18 U.S.C. § 3553, the district court must also consider (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the range calculated under the now-advisory guidelines; (d) the need to avoid unwarranted sentencing disparities; and (e) the need for restitution. 18 U.S.C. § 3553(a)(1), (3)-(7). See United States v. Perry, 389 F. Supp. 2d 278; 2005 U.S. Dist. LEXIS 20230 (D. R.I. 2005); United States v. Dixon, 449 F.3d 194; 2006 U.S. App. LEXIS 12224 (1st Cir. Mass. 2006) Here it appears the defendant a 27 year old man presents found guilty of possession with intent to deliver approximately 1.26 ounces of crack cocaine. He was also found guilty of having a firearm which he reportedly disgarded prior to his arrest and made no

provocative action therewith. The defendant has had a troubled past but has family support. Defedant has been unsuccessfully seeking to obtain copies of certain records which would have it is believed described mental health and extraordinary medical challenges and difficulties in defendants life. The court may well view the defendant as a person using narcotics who is in need of intensive treatment rather than a person who needs a outsized jail term. He will under all circumstances here have the follow on five year sentence. The public message regarding any sentence reducing from the strict calculation would be consistent with the growing public view that people with addiction to narcotics in drug cases should receive treatment over incarceration for long periods. This procedure could be very effectively coerced by this Court through conditions of supervised release.

---

When considering §3553 factors, a judge should conduct a full and thorough investigation into the particular characteristics of the individual and any other factors that might be relevant to the statutory purpose of sentencing instead of rigidly relying on the guidelines. Koon v. Powell, 518 U.S. 81; 116 S.Ct. 2035; 135 L.Ed. 2d 392 (1996).

Anthony Lipscomb
By his attorney,

_/s/George J. West__________
George J. West, #3052
One Turks Head Place, Suite 312
Providence, RI 02903-2215
Telephone: 401-861-9042
Facsimile: 401-861-0330

Date: ____1/18/2007________

CERTIFICATION

- I hereby certify that on this __18th____ day of January 2007, I forwarded a copy of the within Objection to Mary Rogers, Esq., A.U.S.A., and Stephen Dambruch, U. S. Department of Justice, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903 through the USDC ECF system at Stephen G. Dambruch
stephen.dambruch@usdoj.gov
paulette.gamache@usdoj.gov;usari-ecf@usdoj.gov;kellyann.anderson@usdoj.gov

- Mary E. Rogers
mary.rogers@usdoj.gov
karen.miszkiewicz@usdoj.gov;usari-ecf@usdoj.gov;paulette.gamache@usdoj.gov;kellyann.anderson@usdoj.gov

.

___/s/George J. West____