**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal Docket No. 05-00011-S** |
| **v.** | **February 27, 2006** |
| | **Providence, RI** |
| **ANTHONY LIPSCOMB** | |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LINCOLN D. ALMOND
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: Mary E. Rogers, Esquire
U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5001

For the Defendant: George J. West, Esquire
One Turks Head Place
Suite 312
Providence, RI 02903-2215
(401) 861-9042

Court Reporter:

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

# INDEX

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| None | | | | |

| EXHIBITS | DESCRIPTION | IN EVIDENCE |
|---|---|---|
| **Defendant's:** | | |
| A | Letter and Envelope from Deft. To Mr. Roy | 6 |
| B | Copy of Defendant's Exhibit A | 7 |
| C | Document from Antonio Emmanuel ? | 17 |

**P R O C E E D I N G S**

THE COURT: You may be seated. Good morning.

MR. WEST: Good morning, Your Honor.

MS. ROGERS: Good morning, Your Honor.

THE COURT: Here today in the case United States of America v. Anthony Lipscomb, Criminal Number 05-11S. We're here today for argument on defendant's motion for reconsideration of the prior denial of his motion for new trial filed on December 5, 2005, docket entry 84.

Can the attorneys who are here today identify themselves for the record, please.

MS. ROGERS: Mary Rogers for the United States.

MR. WEST: George J. West for the defendant.

THE COURT: All right. I'll hear from you on the motion Mr. West.

MR. WEST: Yes. Your Honor, this matter is before the Court on reconsideration on the motion for new trial. The motion for new trial as I understand it was denied without hearing. I reviewed those documents and I've written to the court in connection with continuing this matter and indicated that some of the basis--

THE COURT: Is this your February 9th letter Mr. West?

MR. WEST: Yes, Your Honor.

THE COURT: Okay.

MR. WEST: I've also a copy to my sister on that

naturally.

THE COURT: Yep.

MR. WEST: Some of the arguments raised in the motion for new trial sound in *Strickland v. Washington*, ineffective assistance of counsel, and one of the things that I wanted to be sure about and preserve to the defendant was his right to raise a 2255 argument at the appropriate time at the conclusion of his appeals if he chose to do so. I didn't want the Court to somehow treat this as a first 2255.

THE COURT: Well I'm not going to treat this as a 2255. I'll make no reference to 2255 in any report and recommendation I issue to Judge Smith. What's been referred to me is the motion for reconsideration of the denial a motion for a new trial. Obviously this defendant has direct appeal rights and then if he so chooses collateral appeal rights under 2255. Those issues are not before me at this point.

MR. WEST: Thank you, Your Honor. Your Honor, I've focused on two what I think are structural issues that go to his constitutional rights toward a fair trial which are properly before you or properly would have been before the trial justice on a motion for new trial. The first one is that this defendant filed a motion to have his counsel replaced or a motion to withdraw his counsel. He dated that March 3, 2005.

THE COURT: That was attached to your letter?

MR. WEST: That is attached to my letter, Your Honor,

a copy of it. I obtained from the Public Defender's Office the file from this matter when I was assigned and in that file in its original form is the letter that he sent to his lawyer, a copy of that motion which I was showing to my sister this morning, and I'd like it to be an exhibit for this proceeding.

THE COURT: That's fine. Present it to my clerk and she can mark it.

MR. WEST: Full exhibit. If the government has no objection, it's a--

THE COURT: Any objection?

MS. ROGERS: No objection.

THE COURT: All right.

MR. WEST: --it's a motion to withdraw--

THE COURT: Hold on a second. Let me see the document, and we'll get it, after the clerk marks it we'll identify it for the record so we're all on the same page. Ms. Theall has been handed a letter. It looks like a copy of a letter. The signature looks like a copy. It's typed March 3, 2005, or the date, it has a stamp date on it March 7, 2005. And I've also been provided, attached to it is an envelope from Mr. Lipscomb at the Wyatt Detention Facility to Mr. Roy, his former attorney in this matter, postmarked March 4, 2005. I'll accept that as Defendant's Exhibit A, absent any objection from the government. All right you can continue Mr. West.

(Defendant's Exhibit A, admitted)

MR. WEST: Your Honor, I've inquired of the government as to whether they as well had a copy sent to them of this motion at the same timeframe when that letter indicates. It's date stamped March 7th as having been received by the Federal Public Defender's Office. And my sister provided me this morning with a copy of both the envelope and the motion which she found in her files, not having been the primary trial counsel I would note. I'd ask that - she has the original with her. Perhaps she's prepared to allow me to enter that as a full exhibit, but I'd ask this copy at least be an exhibit in this matter of the documents that were received by the United States Attorney's Office.

THE COURT: All right. You can present it to my clerk. Do you have any objection, Ms. Rogers?

MS. ROGERS: No objection to the copy being made a part of the record.

THE COURT: All right. You have the original in your file, Ms. Rogers?

MS. ROGERS: I do, and I was going to make more copies but our copy machine jammed--

THE COURT: All right.

MS. ROGERS: --just before I came over here.

THE COURT: That's fine. I'll accept - I'm provided with a copy of the same documents that are Defendant's Exhibit A. We'll mark these as Defendant's Exhibit B. It's a copy of

the motion to withdraw, March 3, 2005, date stamped received U.S. Attorney's Office, March 7, 2005, and then the envelope postmarked March 4, 2005, addressed to the U.S. Clerk's Office, but the address is actually the Fleet Center address of the U.S. Attorney's Office.

(Defendant's Exhibit B, admitted)

MR. WEST: Yes. I wanted to call your attention to that, Your Honor, in this matter. Exhibit, Defendant's Exhibit B notes that the address on the envelope and Ms. Rogers has with her this morning the original envelope, that the defendant put this document in an envelope, addressed it to the United States Clerk's Office; however, the address goes on to send it to the Fleet Center at 50 Kennedy Plaza. So this was received. It's date stamped March 7, 2005 by the United States attorneys office. I do not believe they have a record of forwarding that document to the court at any point in time, but I'll leave that to Ms. Rogers to deal with. I think that they did receive it. It was clearly addressed to the clerk's office in March. So that's one part of the story.

If I could lay the record a little further, Your Honor. I note after reviewing the document - I was reviewing the document with your clerk who provided me a copy as recently as Friday. Again, that we were able to find in the file a copy of this motion which is document number 85 in the docket. I have a copy of the docket. I know the court's docket is part

of its own record and you can take notice of it, but for the purposes of simplicity I have a copy.

THE COURT: All right. I have the file here and I have in front of me docket entry 85, which is this same motion to withdraw, March 3, 2005, and it has a the stamp on it dated December 5, 2005 and some handwritten notations.

MR. WEST: I believe that that's just a note saying to keep that stamp on the documents. Somebody thought to cross it out originally, but I believe that that - that is the date that someone stamped it.

THE COURT: Okay.

MR. WEST: Inexplicably, Your Honor, it's now, and I did not file that document, inexplicably it's now filed in the court's record in December, well after the parties had received it in March. We haven't been able to find an explanation for that, however, I think that those are the three relevant documents that speak to this issue of the defendant having raised very early on that he had a conflict. He felt he had a representational issue with his attorney. And that motion as far as I can tell was never acted on by the Court. There's no order entered, there's no hearing conducted and there was no inquiry had. I do know that Mr. Roy at least had corresponded with the defendant about the pendency of that motion indicating to him that he had, that it wasn't easy to remove a counsel and that there were other reasons that might be important to the

court for keeping the lawyers on the case that they've assigned to the case. So I know Mr. Roy received the motion and did some responding to Mr. Lipscomb about it. I know--

THE COURT: This response, attached to Mr. Lipscomb's motion that he filed, I'll call it a pro se motion just for lack of a better word, the document number 84, it looks like that was not prepared with your assistance; is that correct, Mr. West?

MR. WEST: That's right, Your Honor.

THE COURT: All right. That document had an attachment to it which the copy I had was not a complete copy. What I have is page three of a February 1, 2005 letter. I don't have page one or two of that letter. Is that the letter you were just referring to, Mr. Roy's response?

MR. WEST: May I have a moment, Your Honor?

(Pause)

MR. WEST: What date did you say the letter was, Your Honor?

THE COURT: Well, I'm looking at the docket. The docket, document number 84 in the docket, defendant's memorandum in support to reconsider has attached to it one page, page three of a letter. It's signed by Mr. Roy. It references Anthony Lipscomb and it's dated February 1, 2005, which obviously is the month prior to the date typed on the motion to withdraw.

MR. WEST: I don't specifically have a copy of that, Your Honor but I do have for example, February 22nd letters, February 15th letters going from the defendant talking about their relationship and how it's not working out. So, I mean if it's more to that point, I'm well aware of that going on between client and attorney. The government's provided me a copy.

THE COURT: Okay.

MR. WEST: I think the point that Mr. – I know this, what we're talking about on this, the point that Mr. Lipscomb was trying to make in that was that he was directed by his lawyer to communicate with him through the mail. So he's trying to indicate that he felt that that was a chilling effect on the attorney-client relationship, that at that point in time things had gotten significantly worse to the point where they were supposed to communicate through the mail.

May I have a moment on that, Your Honor?

THE COURT: You may. You can confer with your client.

(Pause)

MR. WEST: So, Your Honor, I think that this speaks to a structural issue. I think we've laid it out clearly that this was a motion that the defendant clearly tried to bring, at least both counsel were well aware of it, even addressed an envelope to U.S. Clerk's Office trying to get it on before the

Court. I don't know of any resolution to it. I don't know why the government wouldn't have forwarded it to the court, as an officer of the court once receiving it with it clearly noted on the envelope that it was directed to the clerk's office. I understand the Court could take the position they may not have been obligated, but I wonder if that's the case in light of the duties of a government lawyer, rather than even a private lawyer, where the government lawyers are held to a code of ethics which in some ways with institutional issues is even more burdensome to direct a correspondence like that to the clerk's office when it was clearly addressed to the clerk's office. I don't see that it was done because it's not on the docket.

I do note that it's difficult to read the numbers, but I think that the S on that typewriter, if you look at other correspondence that he's prepared is an S and someone traced that S more fully on the motion, but I don't think that's a legitimate reason for it not having gotten its way into the appropriate file for some dead letter or dead document file that may exist in the clerk's office. So I've tried to eliminate that in my mind as a reason why it wasn't in the appropriate file. And the fact that it does show up in the file in December inexplicably defies a good explanation as well. I would note for the Court's information that I found the United States Sixth Circuit, Tenth Circuit case of *United*

*States v. Collins*, which I provided a copy now to the government which speaks to this issue of a pending motion to replace counsel. And in this *Collins* case what happened was the court went forward--

THE COURT: What's the cite of that case?

MR. WEST: Your Honor, I have it as published United States Court of Appeals. I have a copy for the Court date stamped--

THE COURT: Sure, I'll take a copy.

(Pause)

THE COURT: All right. You can continue.

MR. ROGERS: In this case, Your Honor, the issue was the defendant was facing a competency evaluation and there was a motion pending to remove his counsel as I understand it. And the court decided to go forward with the competency evaluation prior to ruling on the motion to replace counsel and the upshot of the case was that that was a violation of his right to be represented by counsel and the adversarial testing that was necessary in that case the court found had not been demonstrated sufficiently and, therefore, they reversed the - this was on a motion for a new trial as well and they reversed and sent the case back. So it appears to me to be on point with what the court faces here with a defendant now faced with a motion for a new trial who tried early on to have his counsel replaced and peculiar to this case was that eventually his own

counsel did move to withdraw after the trial and the court, citing a conflict, and the court did allow him to withdraw, Mr. Roy, in the current case. So it's very similar in that regard.

The issues that were between them I think are somewhat outlined in the defendant's motion for a new trial where he cited strategic differences with his counsel and witnesses that he would have liked interviewed and investigated and approaches he would have liked taken early on in the case that his counsel chose not to do or approached differently. So there's clearly a record there. Early in the case as evidenced by the letter that my client has attached to his motion, the breakdown in the relationship existed. It's evident by that letter that now we're going to mail a correspondence to each other. So it's evident that there was a strained relationship that had formed between counsel and defendant. And I think that--

THE COURT: Let me ask you a question Mr. West.

MR. WEST: Yes, Your Honor.

THE COURT: Did your client every do anything to question why there was no action or no hearing on his motion with respect to Mr. Roy? I'm looking through the file. There appears to be several instances where the defendant has taken it upon himself to file matters directly with the court, motions writing, there's one case where he wrote a letter to Judge Smith regarding a continuance. Are there any, you know,

why didn't the defendant bring up the fact that he wanted a new lawyer after there was no action on the March motion?

MR. WEST: Your Honor, may I have a moment on that?

THE COURT: Sure, you can confer with your client.

(Pause)

MR. WEST: Your Honor, I have had conversations with my client on this issue and one of the things that's happened during the trial was he attempted to, as defendants sometimes do, speak in sort of to extend an argument, a legal argument or to make a point and he was told by Judge Smith that he couldn't speak. That's what he remembers. So I think that putting the burden on the defendant to do more than actually take the kind of large step of moving to replace his own lawyer when defendants don't ordinarily engage in filing pleadings and this defendant did and he did take some efforts to mail it around to the appropriate lawyers, that's a big step in and of itself. And then there were, defendant reports that he did try to make a point during the trial and try to speak for himself and Judge Smith apparently, which I could readily see this happening as he was represented by counsel, did not allow him to speak at that particular time. Whether it was germane to this issue, I wasn't present and I'm not here to represent, that but he does recall that he felt that he couldn't speak on his own behalf beyond what he tried to do with this--

THE COURT: Okay.

MR. WEST: So I have a Connecticut case as well, that speaks to the structural differences, and it is a very current case and gets into the assistance of trial counsel in raising this issue in the context of a motion for a new trial and how the failure to resolve this issue is a structural defect in the trial itself. So I would like to submit this not as in any way binding but helpful precedent--

THE COURT: You may present it--

MR. WEST: --for the Court.

THE COURT: --to my clerk. Thank you.

(Pause)

THE COURT: As I look at it the defendants reconsideration motion raises three issues. The first is this issue regarding the March motion. The second is an issue involving a claim that the courtroom was closed, and then the third a claim that just general ineffective assistance of counsel at trial. I think you've addressed the first. Do you plan to address the other two arguments today?

MR. WEST: Yes, Your Honor. If I could, I'd like to address the issue of the closure of the courtroom. I believe the Court has an original, I'm told the Court has an original affidavit attached to the pleadings of an individual who attempted to attend Mr. Lipscomb's trial and was prevented from doing so do to the courtroom being locked. Can you verify that for counsel, Your Honor?

THE COURT: Sure. I have a document received January 9, 2006, but it's dated December 5, 2005, signed by Emmanuel Antonio, and I can't read the last name. And then it looks like it's witnessed by a Wesley Lucas on the date of October 5, 2005, which I believe was the last trial day in the case. I went to the Federal Court building to attend the closing arguments for Anthony Lipscomb. Arriving a little late, when I got to the courtroom the door was locked and I wasn't able to enter. Is that the document you're referring to?

MR. WEST: That is, Your Honor, Exhibit A(1) to his filing.

THE COURT: All right.

MR. WEST: And if there's no objection I'd like that to be a full exhibit for this proceeding as well.

THE COURT: Any objection from the government?

MS. ROGERS: No objection.

THE COURT: All right. So that will be Defendant's C in this proceeding. Do you have another copy of that?

MR. WEST: I do, Your Honor.

THE COURT: Why don't you present it so she can mark it in this proceeding and we have a full record?

MR. WEST: Did you see it, ma'am?

MS. ROGERS: I think I did.

(Pause)

THE COURT: All right, that's received as Defendant's Exhibit C.

(Defendant Exhibit C, admitted)

MR. WEST: Again, Your Honor, this is peculiar to a motion for a new trial because it does again go to a structural defect in the trial itself speaking to a constitutional right, namely, the Fifth Amendment right that, I'm sorry, the Sixth Amendment right that all criminal prosecutions defendants therein shall enjoy a public trial. And there's no way a defendant can have a public trial when the doors are locked to the courtroom. This individual gained access and has sworn out an affidavit as to the facts of the situation. Your Honor, it's not a test to the entire proceeding, but it is a disturbing sampling of an occasion when a member of the public, someone who was interested in this trial, may have had something to say in this trial, couldn't get in. And that's been shown by affidavit at this point in time, and I raise the Fifth Amendment and I also raise the *United States v. Johnson* case, which speaks to structural defects as being grounds for new trials before--

THE COURT: Was this individual a potential defense witness or was he attending to observe the closing arguments?

MR. WEST: He was an individual who I believe at the time the defendant was interested in having interviewed. May I confirm this fact before I speak further, Your Honor?

THE COURT: Sure, confirm with--

(Pause)

MR. WEST: It was my understanding that this individual was someone who the defendant wished to have investigated further as providing potential information to support his defense. And the fact that he had monitored the trial and come to the final, what appear to be the final arguments of counsel shows his interest in the defendant's case. Beyond that, we can't go of course because he did have issues where things weren't investigated the way he had wished them to be, so I have to leave it there. But I do think that the legal argument is pretty much the same as in the first instance, that this goes to the very fairness of a trial. Was the trial a public trial? And the answer to that given the affidavit that's present before the Court is that it wasn't. So that is issue two of the three that were raised.

And I think that with respect to the failings of his counsel with respect to the arguments that he raises in the motion for a new trial, the way that he conducted his examination of the jurors, for example, the juror who was apparently caught sleeping during the trial, issues of this nature, the cross examination of witnesses, the failure to prepare and call the witness, some of these issues, Your Honor, will have to be resolved in a 22-55 proceeding where there's an evidentiary hearing as to, you know, what was and wasn't done.

And I don't want to stray into that as I said before so I'll leave my argument on these two issues.

THE COURT: All right. Ms. Rogers?

MS. ROGERS: For the record, I'd want to put on the record that I was not lead trial counsel, in fact did not get involved until jury selection the first time in August. This was Stephen Dambruch's case. He handled all pretrial motions and post trial motions to date. He's now in Iraq so he's not available. I did, however, assist in both voir dires and during the trial.

I'd like to address the courtroom issue first. And that is during the trial I did note that there were several family members or friends present throughout the entire trial. The sworn affidavit that the individual was not allowed to get into the courtroom is certainly not very compelling. It does not indicate whether other members of the public were kept out. It also indicates that that individual admittedly was late. Well, certainly during the trial and during and more so during closing argument and jury instructions the court is entitled to close those doors so that there is not disruption during the trial. During the actual presentation of evidence, there's no indication that anyone form the public was denied entry. And again, there is no evidence or proof that anyone ever was denied entry. Simply this individual who was late could not or felt that they could not get into the courtroom at that time.

That does not rise to the level of permitting a new trial or any constitutional indication that there was not an open trial during the entire proceedings.

With regard to the motion to withdraw, again, I'm at a disadvantage not having handled the motions. However, my review of the case file shows that in February of 2005 the defendant filed at least three pro se motions to dismiss. The defendant then on March 7th filed a letter saying that he wanted new counsel, which has been marked as an exhibit, and then in March 23rd of 2005 Judge Smith denied the three pro se motions. There is also in the file correspondence from Mr. Dambruch to the defendant's attorney of record at the time, Edward Roy, prior to the March 23rd ruling that he had received these pro se motions and it was the government's position that they were not going to respond as the defendant was represented by counsel.

This particular defendant was in court numerous times, actually physically present in front of the Court numerous times, so to say that he could not raise the issue if he wanted to pursue the withdrawal of an attorney is certainly not reasonable given the facts of this case. As of March 7th his correspondence has made it to the U.S. Attorney's Office and to his own attorney. Again, to criticize the government for not then forwarding the defendants motion to the clerk's office is not reasonable. It is not clear where he intended that motion to be sent. He had sent several pro se motions to

the government the month prior. And the attorney, his own attorney of record was aware of that filing so the government should certainly not be criticized for not forwarding it to the clerk's office. That is the defendant's responsibility.

But after March 23rd when the Court denies the pro se motions and points out in the reason for his denial that he is represented by counsel and that's the reason for the denial, there are repeated motions filed, again pro se by the defendant and also by his attorney of record, Edward Roy. So he certainly had the ability and wherewithal to continue raising the issue of wanting new counsel if he wished. On April 13th, he was back in court before Judge Smith on a motion to suppress. And, again, after April 13th he filed additional motions. On August 2nd and on August 3rd he was before the court for voir dire while the jury was empanelled, and on August 3rd the first jury was dismissed. On September 22nd he was before the court again on a motion before Judge Smith with regard to the issue of jury questionnaires. And again on August 3rd, he was before the court for voir dire. So he had ample time if this truly was an issue.

The government would suggest that if the court were inclined to consider his motion to withdraw given that this particular counsel was not present for the initial motions, that the voir dire of both August 2nd and 3rd and the October voir dire, the transcript be reviewed with respect simply any

judicial statements. And the reason I'm saying this is because I have a very vague recollection, and I may be confusing it with another trial, so that's why I don't want to put it on the record as it being definitive, but I have a vague recollection of during voir dire, I don't remember if it was August or October, Judge Smith inquiring of Mr. Roy whether he still wanted to press motions, one of them being the motion to withdraw. And I could, like I said I could be confusing this with another trial or just confusing it with the other motions, but the transcript of any bench conferences or conferences done at the same time period of the voir dire would reveal whether that actually took place and that could provide a definitive answer that the defendant was satisfied with counsel at the time that the trial was to commence.

But it is the government's position that even if such a transcript were not requested, the other person who should be asked with regard to this is Mr. Roy who certainly was present during both voir dires as to whether this issue was raised again and whether the defendant withdrew this. Neither of those avenues have been pursued by the defendant, and at this time it's the government's position that there simply is not adequate evidence to support a motion for reconsideration for the new trial and we are asking that it be denied.

THE COURT: Back to the issue of this recollection regarding the jury selection, if you're bringing this issue up

in opposition to these motions why would the defendant have any obligation to go back and obtain transcription to point this out? Wouldn't it be the government's obligation to submit more definitive evidence if this is an issue you believe supports your opposition to the motion for a new trial?

MS. ROGERS: I don't believe it does because I'm saying I have this vague recollection, and I certainly don't want that to be in any way considered some type of evidence that the government is advancing. I think that Mr. Roy is in the best position.

THE COURT: Isn't the best evidence of that, I'm not placing any weight on your vague recollection one way or the other, and with respect to Mr. Roy's recollection, that would only be his recollection. So to me unless you're prepared to obtain transcripts and point out exactly what you're relying on within the, both of those, either one of those jury empanelments, I'm not going to place any weight on that argument at all as a defense in response to the motion for reconsideration. I would think the burden would be on the government if you're saying that there's something that happened there which addresses this issue, to get that information, formalize it and present it to the Court. Absent that, I'm not going to place any reliance on that argument at all.

MS. ROGERS: I understand that completely. It's the

government's position that the defendant certainly has not even come close to meeting his burden. I am as an officer of the court though attempting to put my best recollection of what took place on the record. And if the Court chooses not to consider it, that probably makes the most sense, but I don't want to withhold even a vague recollection of what took place.

THE COURT: Okay. All right, anything further?

MS. ROGERS: No.

THE COURT: Anything further, Mr. West?

MR. WEST: No, Your Honor, not at this time.

THE COURT: All right. I will take this matter under advisement. I've been asked by District Judge Smith to issue a report and a recommendation to him regarding the motion for reconsideration which I will do in the near future. As I represented to you earlier, Mr. West, in deciding an issue, in my report and recommendation to District Judge Smith, I am not going to make any references to the defendant's rights under 2255 or his rights on direct appeal. I'm simply going to address the issues you've raised today and issue a report and recommendation to Judge Smith. It's not my intention to take any affirmative action that would preclude the defendant's rights with regard to either his rights on direct appeal under 2255. So I'm not going to enter into that ground whatsoever.

MR. WEST: Thank you, I appreciate that, Your Honor.

THE COURT: All right. Is there anything further we

need to deal with today in this case, Ms. Rogers?

MS. ROGERS: No, Your Honor.

THE COURT: Mr. West?

MR. WEST: Nothing from the defendant.

THE COURT: All right. Court will stand in recess.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

CERTIFICATION

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Maryann V. Young

April 27, 2006