# United States Court of Appeals
## For the First Circuit

No. 07-1293

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY LIPSCOMB,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
O'Connor,* Associate Justice (Ret.),
and Torruella, Circuit Judge.

George J. West, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Stephen G. Dambruch, Assistant United States Attorney, were on brief for appellee.

August 21, 2008

* The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Anthony Lipscomb was indicted by a federal grand jury on three counts: possession with the intent to distribute five or more grams of cocaine base, possession of a gun in furtherance of a drug trafficking crime, and possession of a gun as a convicted felon. After a three-day jury trial, he was convicted on all counts and sentenced to 195 months' imprisonment. Lipscomb now appeals his conviction and sentence on various grounds. After careful consideration of each of his arguments, we affirm his conviction, but remand for resentencing.

## I. Background

Because Lipscomb questions the sufficiency of the evidence supporting his conviction, we recite the facts in the light most favorable to the jury's guilty verdict. See United States v. Colón-Díaz, 521 F.3d 29, 32 (1st Cir. 2008). We begin by recounting the basic underlying facts and leave further elaboration, as necessary, for the analysis of Lipscomb's several other claims.

On December 30, 2004, Lipscomb was talking on his cell phone outside an auto repair shop when he was approached by Providence Police Detectives Scott A. Partridge and Joseph Colanduono. Lipscomb took several steps away from them and began to run; the detectives chased after him. As he fled, Lipscomb reached into his jacket and retrieved a clear plastic bag, which he threw to the ground. The bag was later found to contain thirty-

five grams of crack cocaine. While continuing to run, Lipscomb also removed a fully-loaded 9 mm gun from his waistband and tossed it under a nearby car. The gun was found to have one round in the chamber ready to fire. As the police closed in, Detective Colanduono grabbed Lipscomb's jacket, but Lipscomb was able to slip out of it and continue fleeing.

Lipscomb was eventually tackled by Detective Partridge and arrested. He was taken to the hospital to treat the cuts and bruises on his face that resulted from the struggle. On his person, he was found to be carrying a cell phone, $1,471 in cash, and a quantity of marijuana.

Lipscomb was indicted by a grand jury on three counts: (1) possession with intent to distribute five or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Lipscomb moved to suppress the gun and crack cocaine found by the police. On April 13, 2005, the district court held a hearing on the motion to suppress and heard testimony from Detectives Colanduono and Partridge, as well as from Lipscomb. Lipscomb identified Colanduono and Partridge and testified that they tackled and beat him without provocation or warning. When

asked about the crack cocaine and the gun, he testified that neither was his. Upon further cross-examination, he reiterated that he did not possess a gun and denied any knowledge regarding the bag of crack cocaine that the Government claimed he had discarded during the pursuit. He denied wearing a jacket that day and repeated his assertion that the police "did not seize the items from me." He testified that he was carrying $1,471 in cash, which he claimed was from his landscaping and handyman businesses.

The district court denied the motion to suppress and admitted the evidence. In its written order, the court concluded that because Lipscomb had testified that he had never possessed either the gun or the crack cocaine at issue, he lacked standing to assert a Fourth Amendment violation. The court went on to provide two other grounds for its decision, concluding that even if it were to accept the Government's version of the facts, Lipscomb's motion to suppress would still fail because he had abandoned his property prior to the seizure and the officers had reasonable suspicion to approach Lipscomb in the first instance.

On October 5, 2005, following a three-day trial, a jury convicted Lipscomb on all counts. Lipscomb moved for a new trial, asserting that his counsel had been ineffective. The court denied the motion. One month later, in December 2005, Lipscomb filed a motion to reconsider, in which he argued that the court had failed to rule on his pro se request for substitute counsel; the request

had been communicated to Lipscomb's counsel and the Government by letter several months before trial. He also asserted that his Sixth Amendment right to a public trial had been violated because the courtroom had been locked for a portion of closing arguments. The court denied the motion to reconsider and the case was set for sentencing.

The Government filed an information pursuant to 21 U.S.C. § 851 requesting the imposition of an enhanced mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B), based on Lipscomb's prior state felony drug convictions. After hearing argument from counsel, calculating the appropriate sentencing guidelines range, and considering the 18 U.S.C. § 3553(a) factors, the court sentenced Lipscomb to 135 months for Count One, to run concurrently with 120 months for Count Three, and sixty months for Count Two, to run consecutively to the 135 months' sentence; Lipscomb was sentenced to a total of 195 months' incarceration. Lipscomb timely appeals, alleging numerous errors by the district court.

## II. Discussion

### A. Motion to Suppress

Before reaching the merits of a suppression challenge, the defendant carries the burden of establishing that he had a reasonable expectation of privacy with respect to the area searched or, as in this case, the items seized. See United States v. Salvucci, 448 U.S. 83, 91-92 (1980); accord United States v. Lewis,

40 F.3d 1325, 1333 (1st Cir. 1994) ("Such an expectation of privacy is a threshold standing requirement that a defendant must establish before a court can proceed with any Fourth Amendment analysis."). While the Supreme Court noted that this threshold analysis is "more properly placed within the purview of substantive Fourth Amendment law than within that of standing," Minnesota v. Carter, 525 U.S. 83, 88 (1998) (citing Rakas v. Illinois, 439 U.S. 128, 140 (1978)), courts continue to refer to it as an issue of "standing," see, e.g., United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004).

During the hearing on the motion to suppress, Lipscomb repeatedly asserted that neither the crack cocaine nor the gun was his. He claimed no interest in the items and denied that the government seized them from him. In cases involving defendants who fail to establish or claim ownership of an item, we have concluded that they lack a sufficient privacy interest to assert a Fourth Amendment violation. See, e.g., United States v. García-Rosa, 876 F.2d 209, 219-20 (1st Cir. 1989) (no standing because the defendant failed to claim that he possessed the box at issue), vacated on different grounds sub nom. Rivera-Feliciano v. United States, 498 U.S. 954 (1990); United States v. Aguirre, 839 F.2d 854, 857 (1st Cir. 1988) (no standing because there was no evidence that the defendant owned or leased the car at issue). In the instant case, Lipscomb actively disowned any interest in any of the seized

items;[1] thus, according to his own testimony, he lacks the expectation of privacy required to challenge the seizure of the crack cocaine and gun. We therefore affirm the district court's motion to suppress on this basis, and we need not reach any of the alternate grounds identified by the court.

**B. Trial Challenges**

Lipscomb argues that the district court made several errors leading up to and during trial. We address each in turn.

**1. Disclosure of Confidential Informant**

Lipscomb challenges the court's decision to deny his request for disclosure of the identity of a confidential informant. We need not tarry long on this argument, because Lipscomb failed to raise the issue before the district court.

After a hearing on the motion, the magistrate judge issued a written opinion denying the request for disclosure of the informant's identity. Lipscomb failed to timely appeal the magistrate judge's ruling to the district court.[2] Lipscomb cannot

---

[1] We note that any fear that Lipscomb may have felt that claiming ownership of the crack cocaine or the firearm would have been used against him at trial is without support in our case law. See García-Rosa, 876 F.2d at 219 (noting the well-settled case law establishing that "testimony given to meet the standing requirements cannot be used as direct evidence against the defendant at trial on the question of guilt or innocence"); see also Lewis, 40 F.3d at 1333.

[2] Rhode Island District Court Local Rule 57.2(c)(1) allows parties ten days to seek review with the district court of a magistrate judge's order.

bypass the district court and bring this appeal to us directly. See, e.g., United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Teamsters Union, Local No. 59 v. Superline Transp. Co., Inc., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."); United States v. Akinola, 985 F.2d 1105, 1108-09) (1st Cir. 1993); cf. Rule 3(b), Rules for U.S. Magistrate Judges in the U.S. District Court for the District of Massachusetts ("[F]ailure to file timely and appropriate objections to that report and recommendation . . . will result in preclusion of the right to appeal the district court's order to the United States Court of Appeals.").

**2. Rule 16 Notice Requirement**

Lipscomb next argues that Detectives Colanduono and Partridge testified as experts without providing the necessary notice and disclosures prior to trial. Specifically, Lipscomb contests their testimony as to the connection between firearms and drug trafficking and the amount of crack cocaine that is consistent with an intent to distribute. We review the admission of witness testimony for abuse of discretion. See United States v. Hatch, 514 F.3d 145, 163 (1st Cir. 2008) (citing United States v. Cormier, 468 F.3d 63, 72 (1st Cir. 2006)).

Federal Rule of Criminal Procedure 16(a)(1)(G) requires that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."[3] Such a request was made by defense counsel in this case. The Government avers that two months prior to trial, it informed defense counsel of its intention to call Detectives Partridge and Colanduono to testify to:

> the street value of the crack cocaine and that, based on their training and experience, the quantity of crack cocaine seized in this case is consistent with possession for distribution to others and not for personal use . . . [and] the methods of operation of narcotics distributors, including . . . the utilization of firearms as part of the drug trade.

After receiving the information from the Government, defense counsel neither made additional requests for information nor sought any clarification. It was not until Detective Partridge took the stand at trial that Lipscomb's counsel objected to the testimony and raised the Rule 16 notice issue at sidebar.

The rule requires that the Government's written summary include "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P.

---

[3] Prior to 2002, the rule was found in Federal Rule of Criminal Procedure 16(a)(1)(E).

16(a)(1)(G). At sidebar, Lipscomb's counsel conceded that the Government's notice was adequate with respect to the witnesses' opinions. Thus, there is no dispute that Lipscomb was on notice with respect to the particular conclusions drawn by the witnesses regarding the role of firearms and the quantity of crack cocaine at issue. Cf. United States v. Duvall, 272 F.3d 825, 828-29 (7th Cir. 2001) (finding insufficient a general list of topics that lacked the witness's actual opinion).

Lipscomb's Rule 16 objection is instead based on an alleged failure to provide notice regarding the "bases for [the witnesses'] ultimate opinion[s]." The district court overruled the objection and concluded that there was no Rule 16 violation, stating that "the Government could [have] be[en] more precise in setting forth the basis of the officer's opinion, but I don't believe it rises to the level of [a] violation of Rule 16. Even if it did, I think the case law . . . makes clear that suppression of the evidence, or exclusion of the evidence, is clearly not the sanction that is called for." Lipscomb disagrees and renews his argument on appeal.

In response, the Government makes two separate arguments: (1) neither the testimony regarding the connection between drug trafficking and firearms, nor the testimony regarding the quantity of drugs typically involved in distribution crimes, constitutes expert testimony and therefore the notice requirement was not

triggered; and (2) in any event, the notice provided was adequate. We need not address the first argument, as it is clear in this case that irrespective of whether it was expert testimony, the Government provided sufficient notice to comply with Rule 16.[4]

The Government's notice, while by no means detailed, was enough to satisfy the requirements. The Government informed defense counsel that the officers would be testifying on the basis of their "training and experience." The notice clearly stated that the officers' testimony would make conclusions regarding the presence of firearms and the connection between the quantity of crack cocaine seized from the defendant and drug distribution, and that those conclusions were based on the officers' experience working in the police department. The inferential step necessary to go from the notice provided by the Government to the actual testimony given at trial is not one requiring more notice. Given that the defense had full notice of the actual opinions to which the detectives intended to testify, we are unpersuaded by the defendant's criticism of the lack of detail regarding the bases for those opinions. In the factual context of this case, we conclude

---

[4] With respect to the connection between firearms and drug trafficking, we have held that such testimony is not expert testimony. See United States v. Ayala-Pizarro, 407 F.3d 25, 29 (1st Cir. 2005) ("It required no special expertise for Officer Mulero to conclude, based on his observations, that places which sell drugs are often protected by people with weapons."). We have not made such a ruling regarding the amount of drugs consistent with personal use versus distribution, and we have no occasion to do so now.

that the proffered notification -- that the testimony would be based on knowledge gained from formal training and years of experience as police officers -- is sufficient.

Had the testimony involved a more complex subject matter, as found in cases involving technical or scientific evidence, more detailed notice may have been required. See Fed. R. Crim. P. 16 1993 amend. advisory committee's note (observing that in more novel and complicated areas, greater disclosure may be required, including "written and oral reports, tests, reports, and investigations, [and] any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703"). This is not such a case. Moreover, the bases for the detectives' conclusions were adequately probed by defense counsel on cross-examination with no particular difficulty. See id. (stating that the goal of Rule 16 is "to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination"). Accordingly, we conclude that the district court did not abuse its discretion in overruling the defendant's objection.

**3. Limitations on Cross-Examination**

Lipscomb's next assignment of error concerns the limits placed on his ability to impeach the detectives' testimony. We review a district court's imposition of "reasonable limits on

cross-examination" for abuse of discretion.[5] United States v. Byrne, 435 F.3d 16, 21 (1st Cir. 2006) (quoting United States v. González-Vázquez, 219 F.3d 37, 45 (1st Cir. 2000)) (internal quotation marks omitted).

The district court rejected the defendant's request to call witnesses and offer exhibits to establish inconsistencies regarding Lipscomb's license plate. The two detectives testified that they observed Lipscomb driving a green Jaguar with the license plate "XM-82" on the day of his arrest.[6] Defense counsel sought to call three witnesses who would testify that on the day of his arrest, Lipscomb's green Jaguar was registered under a vanity license plate, "SOVRN." The court concluded that because the license plate identification is not material to Lipscomb's guilt or innocence, it is a collateral issue on which extrinsic evidence is inadmissible. We agree and find no abuse of discretion here.

---

[5] Normally, a preserved challenge to a defendant's Sixth Amendment right to confront adverse witnesses is evaluated in two steps. First, we review de novo a district court's decision to limit cross-examination to determine whether the defendant was given "sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation." United States v. González-Vázquez, 219 F.3d 37, 45 (1st Cir. 2000). If satisfied that this constitutional threshold was met, we then review the district court's limitations for abuse of discretion. In this case, no argument is made that the district court's actions were constitutionally infirm, nor indeed is there basis on the record for such an allegation.

[6] There is no dispute that Lipscomb's green Jaguar had previously been registered under the license plate "XM-82."

The thrust of Lipscomb's argument is that the detectives' testimony is key to the Government's case and evidence of inconsistency regarding the license plate undermines the detectives' credibility. Lipscomb thus argues that the district court abused its discretion by invading the jury's role in making credibility determinations. The testimony regarding the license plate is, however, a collateral issue; a party is barred from impeaching a witness on a collateral matter through the use of extrinsic evidence. See United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993) ("[W]hen a witness testifies to a collateral matter, the examiner 'must take [the] answer,' i.e., the examiner may not disprove it by extrinsic evidence."). The determination of whether an issue is collateral or not turns on whether it is "relevant for a purpose other than mere contradiction of the in-court testimony of the witness." 1 McCormack on Evidence § 45, at 169; see also United States v. Mulinelli-Navas, 111 F.3d 983, 988 (1st Cir. 1997) ("The evidence must have an independent purpose and an independent ground for admission." (quoting United States v. Payne, 102 F.3d 289, 294 (7th Cir. 1996))). Specifically, the "offered testimony must not only contradict a statement of [the witness], but must also be material to [the defendant's] guilt or innocence." Mulinelli-Navas, 111 F.3d at 988.

Here, Lipscomb failed to establish any independent and material ground for admitting the testimony and evidence regarding

the license plate; the evidence of the license plate did not relate to Lipscomb's guilt on either the drug or firearm charge. The district court did not abuse its discretion in limiting the defendant's ability to present testimony and evidence on the issue, which was only relevant to impeaching the detectives' credibility on a topic immaterial to Lipscomb's guilt.

### 4. Motion for Acquittal

At the end of the Government's case-in-chief, Lipscomb moved for a judgment of acquittal on Counts One and Two; the district court denied the motion. We review a district court's denial of a Rule 29 motion for a judgment of acquittal de novo. United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005). Viewing the evidence in the light most flattering to the jury's guilty verdict, we assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt. We have described this standard of review as "formidable," id. (quoting United States v. Loder, 23 F.3d 586, 589 (1st Cir. 1994)) (internal quotation marks omitted), and "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." Id. (quoting United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000)) (internal quotation marks omitted).

Lipscomb argues that the Government failed to present sufficient evidence to convict him under 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B). He contends that the Government presented no evidence that someone was coming to pick up drugs from Lipscomb and that there were no witnesses who testified to observing Lipscomb involved in any drug transactions. Furthermore, Lipscomb argues that the Government's case hinges on the testimony of Detectives Partridge and Colanduono, who testified that thirty-five grams of crack cocaine was an amount consistent with an intent to distribute; on cross-examination, however, they admitted that it was possible for that quantity to be consistent with personal use. Lipscomb thus argues that no reasonable jury could have found him guilty. The Government challenges Lipscomb's myopic view of the trial evidence.

First, with respect to the thirty-five grams of crack cocaine, both Detectives Partridge and Colanduono testified that the amount was consistent with distribution. Whether the jury found the detectives credible is a decision we leave to the jury. Credibility determinations are squarely within the jury's province, and we will not disturb them unless there is no reasonable way a jury could have found the witnesses believable. See Hernández, 218 F.3d at 64; see also United States v. Gómez-Pabón, 911 F.2d 847, 853 (1st Cir. 1990) (holding that a jury's assessment of a witness's credibility will not be disturbed unless the testimony is "incredible or insubstantial on its face" (quoting United States v. Aponte-Suárez, 905 F.2d 483, 489 (1st Cir. 1990))) (internal

quotation marks omitted). Indeed, the jury heard during cross-examination that this quantity of crack cocaine could have been for personal use. The jury could have discounted the detectives' testimony, but it chose not to do so.

Second, the detectives testified that at the time of the arrest, Lipscomb exhibited no signs of having ingested or being under the influence of crack cocaine. Furthermore, the detectives did not find any crack pipes or any other implements used to smoke crack cocaine on Lipscomb's person. The Government thus argues that the jury could have made the reasonable inference that the quantity of crack cocaine attributed to Lipscomb was for distribution, not personal use.

Third, the Government presented evidence that Lipscomb was carrying a loaded handgun with one round in the chamber, ready to fire, and over $1,400 in cash. The Government argued that the loaded handgun demonstrated that he was in the process of transacting drug deals and carried the gun for protection; the cash was the apparent proceeds from those drug deals.

Based on this evidence, we conclude that a reasonable jury could have found Lipscomb guilty beyond a reasonable doubt. Accordingly, we affirm the district court's denial of defendant's Rule 29 motion.

### C. Motion for a New Trial

The jury returned a guilty verdict on October 5, 2005. On October 17, Lipscomb filed a pro se motion for a new trial in which he asserted that his trial counsel was ineffective because he neglected to call certain witnesses, declined to challenge a particular juror, was ineffective in conducting cross-examination, and handled two motions poorly. The district court denied the motion. Lipscomb then filed a second pro se motion for a new trial, captioned as a motion for reconsideration, on December 5, 2005. In this motion, Lipscomb made two claims: (1) the district court failed to rule on his pre-trial motion for substitute appointed counsel; and (2) he was denied his Sixth Amendment right to a public trial because the courtroom doors were allegedly locked during a portion of the closing arguments. We review the denial of a motion for a new trial for abuse of discretion. See United States v. Connolly, 504 F.3d 206, 211 (1st Cir. 2007), cert. denied, 128 S. Ct. 1689 (2008).

#### 1. Ineffective Counsel

Seven months before trial, Lipscomb crafted a pro se motion to remove his counsel due to a "conflict of interest and ineffective counsel." A copy of the motion was mailed on March 3, 2005, to the United States Attorney's Office and to Lipscomb's counsel. No mention was made of the motion to the court; although Lipscomb filed other written requests to and appeared before the

court, he did not ask about the March 3 letter and made no other mention of a desire to terminate his relationship with counsel. Lipscomb continued to trial with his same counsel. It was not until December 5, 2005, (when Lipscomb filed his motion for reconsideration) that the motion first appeared in the district court's file.

On appeal, Lipscomb appears to frame the discussion of his pro se motion for substitute counsel as further support for his argument that a new trial should have been granted because trial counsel was ineffective. Lipscomb contends that the filing of the March pro se motion is further evidence of his counsel's ineffectiveness, as well as their broken relationship. To the extent that ineffective assistance is the basis for the new trial motion, we conclude that the district court properly denied the motion, observing that an ineffective assistance claim is typically raised in a collateral proceeding with the benefit of a more fully developed record. See, e.g., United States v. Wilkerson, 251 F.3d 273, 278-79 (1st Cir. 2001); see also generally Massaro v. United States, 538 U.S. 500 (2003).

With respect to the suggestion that Lipscomb's new trial motion should have been granted because of the district court's failure to rule on his pro se motion for substitute counsel, we find the argument unavailing. Given the undisputed facts regarding the means by which the district court was made aware of the motion

-- two months after the end of trial -- we cannot hold the court responsible for "fail[ing] to rule on" the motion. Thus, the court did not abuse its discretion in denying the motion for a new trial on the basis of this unfiled motion.

### 2. Sixth Amendment

In his motion to reconsider, Lipscomb asserts that he should be granted a new trial because the district court violated his Sixth Amendment right to a public trial. See Owens v. United States, 483 F.3d 48, 61 (1st Cir. 2007) ("The guarantee of a public trial is for the benefit for the defendant; a trial is far more likely to be fair when the watchful eye of the public is present."). Specifically, he avers that the courtroom was closed for a period of time during closing arguments. In support of his claim, Lipscomb submits an affidavit from an individual who states that he had sought to attend closing arguments, but was unable to enter the courtroom because the doors were locked.

The Government raises several arguments in response. First, it argues that the claim is time-barred and, therefore, we lack jurisdiction. Rule 33 provides two separate time limits for the filing of a new trial motion: (1) a defendant has three years to file a motion based on "newly discovered evidence," and (2) a defendant has only seven days if the motion is "grounded on any reason other than newly discovered evidence." Fed. R. Crim. P. 33(b). Lipscomb's motion to reconsider, which advances the Sixth

Amendment argument for the first time, was submitted on December 5, 2005 -- nearly two months after the jury's guilty verdict.

The Government argues further that Lipscomb's Sixth Amendment argument is not based on "newly discovered evidence," because it is not "evidence" in the context of Rule 33(b)(1). The Government urges us to adopt a narrow definition of "evidence" that is limited to evidence pertaining to guilt or innocence, as opposed to evidence relating to collateral issues. See, e.g., United States v. Hall, 324 F.3d 720, 722-23 (D.C. Cir. 2003) (citing cases on both sides of a circuit split). The Government thus contends that the information upon which Lipscomb's Sixth Amendment argument is based is "only information" and not evidence for purposes of Rule 33(b)(1) because it does not bear on guilt or innocence; thus, his claim is time-barred. The Government argues that while such collateral information constitutes evidence for purposes of Rule 33(b)(2), it does not constitute evidence for purposes of Rule 33(b)(1). We are unpersuaded and decline to give the term "evidence" two different meanings within the same evidentiary rule.

The Government next contends that Lipscomb's argument is meritless, lacking any competent evidence that the door was in fact locked. In support of his argument, Lipscomb presented only a two-sentence, unsworn, handwritten letter from an individual.[7] The

[7] The magistrate judge was unable to read the last name of the declarant. She surmised that the name was "Emmanuel Antonio."

letter stated: "On the date of 10-5-05 I went to the federal court building to attend the closing arguments for Anthony Lipscomb. Arriving alittle [sic] late, when I got to the court room the door was locked and I wasn't able to enter." The letter was dated December 5, 2005, and was received by the court on January 9, 2006.

Other than this two-sentence letter, Lipscomb provides no other support for his Sixth Amendment claim. At a hearing on his motion, Lipscomb offered no further proof: he did not produce the declarant as a witness; he proffered no explanation for his inability to do so; and he provided no affidavits or testimony from court personnel to corroborate the declarant's statement. On the basis of this letter alone, Lipscomb urges us to find that he satisfies his burden to establish a constitutional violation. See Owens, 483 F.3d at 63 (observing that the party asserting the claim carries the burden of demonstrating the Sixth Amendment violation); cf. Borges Colón v. Román-Abreu, 438 F.3d 1, 14-15 (1st Cir. 2006) (party claiming First Amendment violation has the burden of proof). We refuse to do so.

This unsworn and unsubstantiated declaration, alone, is not sufficient competent evidence to demonstrate that Lipscomb's Sixth Amendment right to a public trial was violated. Indeed, Lipscomb does not purport to show that the alleged closure was intentional or that it occurred during the evidentiary phase of his trial. The letter offered by Lipscomb states that the declarant

was seeking to "attend closing arguments"; at most, the closure occurred after the end of witness testimony and the submission of trial evidence. For all of these reasons, we conclude that the district court properly denied Lipscomb's motion for a new trial.

**D. Sentencing**[8]

A sentencing hearing was held over the course of two days in January and February 2007. At the hearing, Lipscomb challenged the Sentencing Guidelines' disparate treatment of crack and powder cocaine. Lipscomb was sentenced prior to the Supreme Court's decision in Kimbrough v. United States, 128 S. Ct. 558 (2007), in which the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 575.

Because the district court sentenced Lipscomb before Kimbrough was announced, the court had no reason to express any disagreement with the Sentencing Guidelines' 100:1 crack/powder sentencing ratio. See United States v. Pho, 433 F.3d 53 (1st Cir. 2006). The district court sentenced Lipscomb to 135 months'

---

[8] In his brief, Lipscomb argues that the court's use of the 21 U.S.C. § 851 information as a sentencing enhancement was unconstitutional. At oral argument, defense counsel conceded that the argument is clearly foreclosed. See Almendárez-Torres v. United States, 523 U.S. 224 (1998); United States v. Fink, 499 F.3d 81, 85-87 & n.3 (1st Cir. 2007).

imprisonment, a sentence at the low end of the applicable guidelines, but fifteen months above the mandatory minimum. The court might have imposed a lesser sentence had it known that it was permissible to deviate from the 100:1 crack/powder ratio based on a disagreement with policy. Lipscomb preserved the issue, and the Government is not opposed to a limited remand on this basis. Thus, we shall remand to permit the district court to reconsider the sentence in light of Kimbrough.[9]

## III. Conclusion

For the foregoing reasons, we affirm Lipscomb's conviction, but remand to the district court for the limited purpose of resentencing in light of Kimbrough.

**Affirmed and Remanded.**

---

[9] Lipscomb also makes reference to the recent amendment to the Sentencing Guidelines that reduces the base offense level for crack cocaine offenses. See U.S.S.G. § 2D1.1. To the extent that Lipscomb urges us to simply impose the new base offense level, we decline. Lipscomb may file the appropriate motions in district court under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.

2008 AUG 22 A 4:28
FILED