UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - -
                                    :
UNITED STATES OF AMERICA            :
                                    :
     v.                             :     CR  No.  05-011-S
                                    :
ANTHONY LIPSCOMB                    :
                                    :
- - - - - - - - - - - - - - - - -

**MEMORANDUM AND ORDER**

William E. Smith, United States District Judge.

Anthony Lipscomb has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, that motion is DENIED.

<u>Factual Background and Travel</u>[1]

On January 26, 2005, Lipscomb was charged with (1) possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).

---

[1] Except as otherwise indicated, the facts and travel are drawn from the decision of the Court of Appeals on Lipscomb's direct appeal, <u>United States v. Lipscomb</u>, 539 F.3d 32, 34-35 (1st Cir. 2008), and the decisions of this Court in its rulings on LIpscomb's motion to suppress and motion for new trial. <u>See</u> <u>United States v. Lipscomb</u>, No. Cr. 05-011 S, 2005 WL 1279217 (D.R.I. May 25, 2005) (denial of motion to suppress); <u>United States v. Lipscomb</u>, No. Cr 05-11-01S, 2006 WL 1549106 (D.R.I. May 30, 2006) (denial of motion for new trial).

Throughout all pretrial and trial proceedings Lipscomb was represented by Federal Public Defender Edward C. Roy.

At his arraignment the previous order detaining Lipscomb was continued. Prior to trial, the Government filed an information pursuant to 21 U.S.C. § 851 requesting the imposition of an enhanced mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B), based on Lipscomb's prior state felony convictions.

Lipscomb filed a motion to suppress the gun and crack cocaine found by the police. At the suppression hearing, this Court heard testimony from Detective Colanduono and Officer Partridge, as well as from Lipscomb.

Both Colanduono and Partridge testified that they received information from a reliable confidential informant (CI) that Lipscomb was dealing drugs and was known to carry a weapon and to drive a Jaguar. On the date of the arrest, Officer Partridge received a tip from a second CI that Lipscomb would be in the West End of Providence to do a drug deal and that he would be in possession of a large amount of crack cocaine and a weapon. Upon traveling to that location, Colanduono and Partridge observed Lipscomb arrive in a Jaguar, exit the vehicle and begin talking on a cell phone. The officers approached him and Lipscomb took several steps away from them and began to run. The detectives chased him. As he began to flee, Lipscomb reached into his jacket

and retrieved a clear plastic bag, which he threw to the ground. The bag was later found to contain 35 grams of crack cocaine.

The officers further testified that in the course of the chase, Lipscomb also removed a fully-loaded 9mm gun from his waistband and tossed it under a nearby car. As the police closed in, Detective Colanduono grabbed Lipscomb's jacket, but Lipscomb was able to slip out of it and continue fleeing. Lipscomb was eventually tackled by Detective Partridge and arrested after a struggle. He was found to be carrying a cell phone, $1,471 in cash, and a quantity of marijuana.

Lipscomb's testimony differed markedly from that of the two detectives. He testified that Colanduono and Partridge tackled and beat him without provocation or warning, and he denied that the crack cocaine and gun were his. On cross-examination he reiterated that he did not possess a gun and had no knowledge of the bag of crack cocaine that the Government claimed was his. He denied wearing a jacket that day and repeated his assertion that the police "did not seize the items from me." He claimed that the $1,471 in cash found on his person was from his landscaping and handyman businesses.

This Court denied the motion to suppress and admitted the evidence. <u>See</u> Decision and Order, May 25, 2005 (ECF No. 35), <u>United States v. Lipscomb</u>, No. CR 05-011 S, 2005 WL 1279217 (D.R.I. May 25, 2005). In its Order, this Court concluded that because

Lipscomb had testified that he had never possessed either the gun or the crack cocaine at issue, he lacked standing to assert a Fourth Amendment violation. (<u>Id.</u> at *3.) This Court further noted that even aside from the standing issue, based upon the parties' testimony concerning the chase and arrest, Lipscomb's motion to suppress would still fail because under the police version of events, Lipscomb had abandoned the drugs and gun prior to being seized and the officers had reasonable suspicion to approach Lipscomb in the first instance. (<u>Id.</u> at *3-4.)

Lipscomb also filed a pretrial motion for disclosure of confidential informant, which was heard by Magistrate Judge Lincoln Almond of this Court. After hearing, Judge Almond denied the motion. (<u>See</u> Mem. and Order, June 24, 2005, ECF No. 43 (hereinafter "Disclosure Ruling").)

On October 5, 2005, following a three-day trial, a jury convicted Lipscomb on all counts. Lipscomb then moved for a new trial, asserting that the assistance of his counsel had been ineffective. This Court denied the motion. One month later, in December 2005, Lipscomb filed a <u>pro se</u> motion asking the court to reconsider his new trial motion (ECF No. 84), in which he argued that this Court had failed to rule on his <u>pro se</u> motion for substitute counsel. According to him, the motion had been delivered to both his defense counsel and the Government prosecutor several months before trial but had not been filed with this Court.

The motion to reconsider was referred to Magistrate Judge Almond,
who conducted a hearing and issued a report and recommendation
(hereinafter "R&R") recommending that the motion be denied.  On May
30, 2006, this Court accepted the R&R and denied the motion to
reconsider.  See Order Adopting Report and Recommendation, with R&R
attached, ECF No. 100; United States v. Lipscomb, No. CR 05-11-01
S, 2006 WL 1549106 (D.R.I. May 30, 2006).[2]

At or about the time that Lipscomb's pro se motion for
reconsideration was filed, Attorney Roy withdrew as Lipscomb's
counsel and Attorney George West was appointed to represent
Lipscomb for all further proceedings in this Court.

A presentence report (PSR) prepared by the U.S. Probation
Office found a sentencing guideline range of 135 - 168 months and
noted that in view of the § 851 information filed by the
Government, Lipscomb was subject to an enhanced mandatory minimum
sentence of ten years for Counts I and III under 21 U.S.C. §§
841(a)(1), (b)(1)(B) and 18 U.S.C. § 922(g)(1), and a statutory
mandatory minimum sentence of five years for the Count II offense
under 18 U.S.C. § 924(c).  Defense counsel made several objections

_____

[2] In his motion for reconsideration Lipscomb also asserted
that his Sixth Amendment right to a public trial had been violated
because the courtroom had been locked for a portion of closing
arguments.  Lipscomb, 2006 WL 1549106 at *3.  This argument was
likewise rejected.  It is not raised in the instant motion and need
not be further discussed herein.  A further claim of general
ineffective assistance by his trial counsel was denied as
premature.  (Id.)

-5-

to the PSR and challenged the filing of the § 851 information and the then-existing 100:1 crack to cocaine disparity in the guidelines.

At the sentencing hearing, which occurred over two days, this Court, after hearing argument from counsel, rejected all of Lipscomb's challenges. It found the guideline range to be as set forth in the PSR and sentenced Lipscomb to 135 months imprisonment on Count I, to run concurrently with 120 months imprisonment on Count III, and 60 months imprisonment on Count II, to run consecutively to the 135-month sentence. (See Sentencing Hr'g Tr. 35-38, Feb. 1, 2007 (hereinafter "Sent. Tr.").)

Lipscomb appealed, still represented by Attorney West. The Court of Appeals affirmed the conviction on all counts but remanded for the limited purpose of sentencing in light of Supreme Court's decision in Kimbrough v. United States, 552 U.S. 85 (2007). Upon remand, Lipscomb was sentenced to 120 months imprisonment on both Counts I and III and 60 months imprisonment on Count II, to run consecutively to the 120-month term. Lipscomb's appeal of that sentence was summarily denied by the First Circuit on November 25, 2009.

In May 2009, Lipscomb filed the instant motion to vacate. He asserts ten claims of ineffective assistance of his trial and sentencing counsel. He further claims that this Court erred in denying his pro se motion asking for the withdrawal of his counsel

and that the Government prosecutor failed to correct false testimony given by the police officers at trial. The Government has objected to the motion to vacate.

Lipscomb has also filed a motion to amend his motion to vacate (ECF No. 176), seeking leave to assert two new claims. This motion is discussed <u>infra</u>. The instant matter is ready for decision.[3]

<u>Discussion</u>

Generally, the grounds justifying relief under § 2255[4] are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law.

---

[3] Although Lipscomb has requested an evidentiary hearing, no hearing is required in connection with the issues raised by this motion to vacate, because, as discussed <u>infra</u>, the files and records of this case conclusively establish that his claims are without merit. <u>See</u> <u>David v. United States</u>, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when . . . the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible") (internal quotations and citation omitted); <u>see also</u> <u>Ouellette v. United States</u>, 862 F.2d 371, 377 (1st Cir. 1988) (no hearing required where district judge is thoroughly familiar with underlying case).

[4] Title 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

See <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotations and citation omitted).

A.   Ineffective Assistance – General Principles

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)   That his counsel's performance fell below an objective standard of reasonableness; and
(2)   [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984); <u>accord</u> <u>United States v. Manon</u>, 608 F.3d 126 (1st Cir. 2010).

To satisfy the deficient-performance prong, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" <u>Manon</u>, 608 F.3d at 131 (quoting <u>Strickland</u>, 466 U.S. at 690). An attorney's trial performance is accorded deferential review and a court should not assess the attorney's performance based on hindsight. <u>Strickland</u>,

466 U.S. at 687-91; <u>accord</u> <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993).

To satisfy the prejudice requirement under <u>Strickland</u>, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Manon</u>, 608 F.3d at 131 (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is one sufficient to undermine confidence in the outcome. . . . In making the prejudice assessment, [a court focuses] on the fundamental fairness of the proceeding." <u>Id.</u> at 131-32 (internal quotations and citations omitted).

Lipscomb's ineffective assistance claims challenge his counsel's performance during pretrial, trial and sentencing proceedings and are discussed in that order.

B.    Ineffective Assistance – Pretrial Proceedings

1.    <u>Pro se</u> Motion for Withdrawal of Counsel

Lipscomb first claims that his trial counsel failed to bring to this Court's attention his <u>pro se</u> motion seeking a new attorney and a continuance (ECF No. 84). He contends that a conflict arose between him and his counsel due to counsel's failure to take certain actions suggested by him.[5] He further alleges that on March 3, 2005,

_____

[5] The actions sought by Lipscomb included reviewing grand jury transcripts and mentioning Lipscomb's initial detention while in federal custody as a basis for his release at his arraignment. To the extent his ineffective assistance claim is based on Attorney Roy's failure to take these actions, it is rejected, as Lipscomb

several months before trial, he prepared a _pro se_ letter motion to remove his counsel due to "a conflict of interest and ineffective counsel" and mailed it to his counsel and to the U.S. Attorney's office, but neither of them filed the motion with this Court. (Mot. to Vacate at 1-2, 15-16, ECF No. 168.)

The record shows that Lipscomb's _pro se_ motion, although dated March 3, 2005, was not filed with this Court until December 5, 2005 -- two months after trial -- along with his motion for reconsideration of his motion for new trial. (_See_ ECF Nos. 84, 85)[6]

Lipscomb fails to show either objectively deficient performance or prejudice with respect to this claim. First, as both this Court and the First Circuit have noted, after Lipscomb submitted his _pro se_ letter motion to counsel, he did not inquire about it and made no other mention of a desire to terminate his relationship with counsel. _See_ _Lipscomb_, 2006 WL 1549106 at *2, _aff'd_, _Lipscomb_, 539 F.3d at 41. Moreover, Lipscomb continued to work with Attorney Roy in prosecuting his defense. He testified at his suppression hearing and consulted with Roy extensively during jury impanelment.

_____

shows neither deficient performance nor prejudice from his counsel's actions. Lipscomb's other claims based on his disagreements with counsel are discussed _infra_.

[6] The motion to withdraw was filed as an attachment to the motion for reconsideration but was separately docketed as ECF No. 85. Although designated as a motion to withdraw, the motion was signed not by Attorney Roy but by Lipscomb, and thus was construed as a motion for appointment of new counsel. _See_ _Lipscomb_, 2006 WL 1549106 at *2. In the meantime, Attorney Roy separately filed his own motion to withdraw (ECF No. 77), which was granted.

Utilizing Roy's services, Lipscomb filed other written requests, appeared before the Court, and had his trial date pushed back via multiple continuances from March to December. *See Lipscomb*, 2006 WL 1549106 at *2. Furthermore, Lipscomb himself wrote to this Court in July 2005 requesting a continuance to further prepare for trial, stating "[w]e need more investigation," without mentioning the March 3, 2005 letter motion or expressing any concerns regarding his attorney. *Id.* Finally, during pretrial and trial proceedings, this Court observed Lipscomb display a working relationship with Attorney Roy in open court.

In short, Lipscomb failed to alert this Court as to the presence of his motion or his discontent and continued to work with counsel in the seven months preceding trial. Thus, it is difficult to see how Attorney Roy's failure to present the *pro se* motion to this Court constituted objectively deficient performance. *See Strickland*, 466 U.S. at 688.

Nor has Lipscomb shown prejudice, given his own failure to follow up on the *pro se* motion. Attorney Roy mounted a vigorous defense on Lipscomb's behalf, even in the face of strong and direct evidence of his guilt. Lipscomb has not shown that the result of his trial would have been different had the *pro se* motion been presented.

In view of these considerations, this Court finds that Lipscomb's claim of ineffective assistance with respect to

presenting his _pro se_ motion for counsel's withdrawal must fail. To
the extent that Lipscomb purports to assert that Attorney Roy
operated under some sort of conflict of interest, he cannot succeed.
A petitioner asserting a conflict of interest claim in a § 2255
petition must demonstrate that an actual conflict of interest
adversely affected the adequacy of his representation. United
States v. Familia-Consoro v. United States, 160 F.3d 761, 764 (1st
Cir. 1998) (citing Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980)).
Specifically, the petitioner must show that: "(1) the attorney could
have pursued a plausible alternative defense strategy and (2) the
alternative trial tactic was inherently in conflict with or not
pursued due to the attorney's other loyalties or interests." Id.
(citing Bucuvalas v. United States, 98 F.3d 652, 656 (1st Cir.
1996)). Here, Lipscomb has not shown that Attorney Roy's failure to
follow Lipscomb's suggested defense strategy was motivated by
anything other than a desire to present the best possible defense
for his client, rather than his own interests.

Moreover, the First Circuit has noted that, disagreements, even
frequent ones, between attorney and client concerning trial strategy
do not, without more, amount to a conflict of interest requiring
relief. See United States v. Mota-Santana, 391 F.3d 42, 46 (1st
Cir. 2004). Here, while Lipscomb and Attorney Roy may have had
differences concerning his handling of Lipscomb's defense, those
differences were not "so deep, pervasive and well-founded that

-12-

effective legal assistance [was] severely handicapped." <u>Id.</u> at 46.

       2.   Suppression Hearing

Lipscomb asserts two ineffective assistance claims in connection with his counsel's performance at his suppression hearing. He claims that his counsel (1) was ineffective in permitting him to testify without informing him of the potential legal ramifications of doing so; and (2) incorrectly argued as to when Lipscomb was first "seized" for Fourth Amendment purposes. (Mot. to Vacate at 4-7.)

At the suppression hearing Lipscomb denied possessing or having any knowledge of the gun or the drugs that were seized at his arrest. On the basis of his testimony, this Court found that he lacked standing to request that the evidence be suppressed. <u>Lipscomb</u>, 2005 WL 1279217 at *3. In light of this finding, Lipscomb contends that his counsel should have more fully advised him concerning the legal effect of his testimony as to the issue of standing and that had he done so, he would not have testified.

Lipscomb admits that during a recess at the suppression hearing, he and his counsel conferred regarding whether he should testify and that Attorney Roy specifically advised him of the risk of his testimony being found to be perjurious by the Court. (Mot. to Vacate at 4.)

Even assuming that counsel failed to address the standing issue with Lipscomb and that this failure was objectively deficient,[7] Lipscomb has not shown prejudice. Contrary to his claim, Lipscomb would not have been successful even if he had standing. In its ruling denying the motion to suppress, this Court clearly noted an alternative ground for denying the motion -- namely, that based on the testimony of the officers, which the Court found to be fully credible, the gun and drugs in question had been abandoned before Lipscomb was seized. See Lipscomb, 2005 WL 1279217 at *3. This Court further found that based on the CI's information, which was corroborated by the direct observations, the police officers had reasonable suspicion to approach Lipscomb in the first instance. Accordingly, Lipscomb has not shown prejudice, and this claim fails.

Lipscomb further claims that his counsel's argument as to when he was initially "seized" by the police was incorrect. He asserts that Attorney Roy should have argued that Lipscomb's seizure began at the time the officers first surrounded him and brandished weapons rather than when they first ordered him to stop as he began to run

---

[7] The record shows that at the outset of Detective Colanduono's testimony, this Court and counsel had a brief discussion in open court, with Lipscomb present, regarding the implications should Lipscomb deny owning or possessing either the gun or the drugs. This Court noted that such an argument would raise an issue of whether he had standing to request the suppression of both items. (See Mot. to Suppress Hr'g Tr. at 32-34, Apr. 13, 2005 (hereinafter "Supp. Tr.").) Lipscomb does not deny hearing this exchange. Thus, he was at least aware of the potential issue prior to taking the stand.

away from them, and that so arguing would have precluded a finding that he abandoned the contraband before he was seized or arrested. (Mot. to Vacate at 6-7.)

Such an argument would be at odds with controlling precedent cited by this Court holding that a person fleeing the police before they have a chance to detain him is not considered to be "seized" for Fourth Amendment purposes. See Lipscomb, 2005 WL 1279217 at *3 (citing United States v. Sealey, 30 F.3d 7, 10 (1st Cir. 1994)) (holding that a person fleeing the police before they have a chance to detain him is not considered to be "seized" for Fourth Amendment purposes) (further citations omitted). Thus, counsel was not ineffective in failing to make the arguments Lipscomb now proposes.

Nor was Lipscomb prejudiced on this point. This Court's primary basis for denying the motion to suppress – which finding was upheld by the Court of Appeals – was Lipscomb's lack of standing based on his own testimony. Lipscomb, 2005 WL 1279217 at *3. That basis is not affected by Lipscomb's contention as to when his seizure began.

### 3. Motion for Disclosure of CI's Identity

Lipscomb also complains about his counsel's failure to appeal Magistrate Judge Almond's ruling denying defendant's motion for disclosure of the identity of one or both CIs. (See Disclosure

-15-

Ruling.)[8] He contends that because the license plate number on his vehicle at the time of his arrest ("SOVRN") differed from the license plate number provided by the CIs ("XM-82"), he was entitled to the identity of the CI's for the purpose of calling and challenging them at trial as to this discrepancy. (Mot. to Vacate at 13-14.) This claim is likewise meritless.

In his ruling, Magistrate Judge Almond relied upon well-established Supreme Court and First Circuit precedent to support his conclusion that the defendant was not entitled to disclosure of the informant's identity. (Disclosure Ruling at 3-4.) He noted that the CI's information concerning Lipscomb's drug activities and the fact that he would be at a certain location on a certain date and time with his girlfriend to do a drug deal was corroborated by the officers' own observations and that the dispute over the license plate number was a peripheral issue. (Id. at 1-2.) He further noted that neither CI was an active participant or observer in Lipscomb's actual arrest and that defense counsel was free to attempt to impeach the police officers at trial concerning the discrepancy in the license plate numbers. (Id. at 4-6.) Finally, he noted – and Lipscomb admits here – that Lipscomb's vehicle previously bore the XM-82 license plate but that Lipscomb had changed it to the SOVRN plate three months before his arrest. (Id.)

---

[8] On appeal, the First Circuit found that Lipscomb's failure to request this Court to review the Disclosure Ruling precluded appellate review of this issue. Lipscomb, 539 F.3d at 36-37.

In view of this, any appeal of the Disclosure Ruling to this Court had little chance of success.  See, e.g., United States v. Gomez-Genao, 267 F.3d 1, 3 (1st Cir. 2001) (holding that a defendant seeking the identity of a tipster who was not a participant or observer of the crime charged must show "exceptional circumstance under which [disclosure] is vital to a fair trial").  Moreover, as the Government points out, Lipscomb fails to identify any legitimate grounds for the appeal of that decision.  It follows that given the relatively low chance of reversal by this Court, counsel's decision not to appeal the Disclosure Ruling did not constitute a tactical decision that was so erroneous as to constitute deficient performance and easily fell with the "wide range of reasonable professional assistance." United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998) (quoting Strickland, 466 U.S. at 689).

For the same reasons, Lipscomb was not prejudiced.  At trial defense counsel adequately cross-examined both Colanduono and Partridge concerning the license plate number of Lipscomb's vehicle.  Thus, this claim fails.

B.    Ineffective Assistance – Trial Proceedings

Lipscomb next asserts several claims relating to the adequacy of defense counsel's representation of him during trial.  Those claims range from allegations that defense counsel failed to interview a potential trial witness and failed to adequately cross-

examine Government witnesses to questioning defense counsel's failure to argue alternative defenses.

All of these claims fall into the category of impermissibly second-guessing tactical trial decisions. It is axiomatic that decisions concerning trial strategy, including the interviewing and calling of witnesses, fall within counsel's purview and are entitled to deference, and that counsel's "strategic choices . . . are virtually unchallengeable." Strickland, 466 U.S. at 690; see Manon, 608 F.3d at 135 (quoting Strickland); Lema, 987 F.2d at 51 (same).

First, counsel's failure to call a "Mr. Rose" as a defense witness does not constitute ineffective assistance. Lipscomb asserts that Rose, an attorney, witnessed a courthouse altercation between Lipscomb and a Providence Police officer approximately one week before his arrest in this case and that his testimony concerning that altercation could somehow show a motive for his subsequent arrest by other Providence Police officers on the instant charges. This claim is spurious. It is highly unlikely that had Rose been interviewed and called, this Court would have even permitted him to testify on such a collateral issue. Attorney Roy's decision to ignore this request by Lipscomb was not only adequate but commendable.

Second, Lipscomb criticizes his counsel's efforts to impeach the police witnesses. He contends that Attorney Roy's cross-

examination with respect to the discrepancy in license plate numbers was ineffective.

The First Circuit has noted that "choices in emphasis during cross-examination are prototypical examples of unchallengeable strategy." Phoenix v. Matesanz, 233 F.3d 77, 83 (1st Cir. 2000). In addition, counsel's tactical and strategic decisions are entitled to a "strong presumption" of correctness. Strickland, 466 U.S. at 689; Lema, 987 F.2d at 56.

Here, Lipscomb's claim challenging his counsel's cross-examination is ambiguous and unclear. To the extent that he seeks to challenge the sufficiency of the cross-examination, that issue was decided on direct appeal, when the Court of Appeals upheld this Court's limits on cross examination, finding that the license plate number discrepancy was collateral to the issue of guilt. See Lipscomb, 539 U.S. at 39 (evidence of license plate discrepancy "was only relevant to impeaching the detectives' credibility on a topic immaterial to Lipscomb's guilt").[9]

_____

[9] This Court acknowledges that in its decision denying Lipscomb's motion to suppress it noted that the testifying officers' failure to properly identify Lipscomb's license plate was "a potential obstacle[] to finding reasonable suspicion." Lipscomb, 2005 WL 1279217 at *4. However, it further noted that "the totality of circumstances here leaves no doubt that the officers were justified in concluding that criminal activity [was] afoot," and accordingly denied the motion to suppress on multiple grounds. Id. (internal citation omitted). Thus, the Court's earlier observation in no way precludes its finding here concerning the license plate discrepancy issue.

To the extent Lipscomb asserts that counsel's efforts to impeach the police witnesses were somehow contradictory to his defense of simple possession of the drugs, it likewise fails, as any effort to impeach the credibility of the police officers involved in Lipscomb's apprehension was not inconsistent with this defense. Third, Lipscomb's claims that his trial counsel failed to vigorously contest both the felon-in-possession charge under 18 U.S.C. § 922(g) (Count II) and the use of a firearm in furtherance of drug trafficking charge (Count III) are likewise without substance. As to the § 922(g) claim, Lipscomb contends that his counsel should have called an expert concerning fingerprints (or lack thereof) on the firearms. However, the arresting police officers testified that they observed Lipscomb pulling the gun from his waistband and throwing it under a nearby vehicle. In addition, the Government admitted at trial that no readable fingerprints were found on the gun. Thus, Attorney Roy's determination not to call an expert was a reasonable decision, well within the range of professionally competent assistance. See Lema, 987 F.2d at 54 ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.").

Lipscomb's claim concerning his counsel's alleged failure to adequately contest the Count III Offense (use of a firearm "in furtherance of drug trafficking") is in essence an attack on the

sufficiency of the evidence, which was rejected on Lipscomb's direct appeal.  See Lipscomb, 539 F.3d at 40-41.  Given the First Circuit's finding that there was sufficient evidence on this issue, and Lipscomb's failure to state what further action Attorney Roy could have taken to change this result, this claim fails as well.  See Tse v. United States, 290 F.3d 462 (1st Cir. 2002) (where substantive claims fail on merits, claims that counsel rendered ineffective assistance in failing to press substantive claims at trial must also fail).

Finally, Lipscomb's challenge to his counsel's overall defense strategy as inconsistent with the facts of the case and his desire to contest all of his charges, including possession, likewise fails. This claim ignores the substantial evidence produced by the Government at trial, including testimony by police officers who personally observed Lipscomb discard both the drugs and the gun as well as this Court's credibility findings made as part of its ruling on the motion to suppress.  This Court has no difficulty concluding that Attorney Roy's defensive strategy fell well within professional norms and "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  Further, Lipscomb has shown no prejudice, as he received a fair trial, and he has failed to show a reasonable probability that the result of his trial would have been different had his strategy been adopted.  Manon, 608 F.3d at 135 (citing Strickland, 466 U.S. at 694).

Thus, Lipscomb's ineffective assistance claims with regard to trial proceedings are all without merit.[10]

C.   Ineffective Assistance – Sentencing

Lipscomb further claims that his sentencing counsel failed to challenge the § 851 enhancement notice filed by the Government, which effectively increased his minimum mandatory sentence from five to ten years.   In support of this claim, Lipscomb erroneously alleges that the Government's notice stated that "the defendant pled nolo contendere to a possession with intent to distribute a controlled substance." (Mot. to Vacate at 11.)  In fact, the notice asserts that the defendant was convicted "of one count of possession of cocaine and a second count of possession of marijuana, both felony drug offenses," and was accompanied by a certified copy of the state court docket sheet.

Lipscomb's contention that one of the prior convictions resulted from some sort of illegal search and seizure is likewise without merit.  The record shows that he was represented by counsel when he entered nolo contendere pleas to both state charges and

_____

[10] In his papers Lipscomb makes a brief assertion that he was "barred from testifying in his own defense due to the miscalculation of simple possession by counsel." (Mot. to Vacate at 8.)  Such an abbreviated reference is not sufficient to state a claim meriting consideration.  See Cody v. United States, 249 F.3d 47, 53 n.6 (1st Cir. 2001) (ineffective assistance claim raised in a perfunctory manner in § 2255 proceeding deemed waived).  In any event, the record shows that defense counsel was given a brief recess immediately before the close of the evidence in order to discuss with Lipscomb whether he should testify, and Lipscomb elected not to testify. (See Trial Tr. 188-89, Oct. 4, 2005.)

never raised any constitutional challenges to the entry of those pleas. Furthermore, during sentencing, Lipscomb's sentencing counsel raised multiple challenges to the imposition of minimum mandatory sentences. The fact that these challenges were unsuccessful does not mean that counsel was ineffective. See Myles v. Dahlberg, 937 F.2d 609 (6th Cir. 1991) (unpublished table decision); Campusano v. United States, No. 03 Civ. 2982 (SAS), 2004 WL 1824112 (S.D.N.Y. Aug. 13, 2004).

D.   Other Claims

Lipscomb raises two direct claims in addition to his ineffective assistance claims. Neither warrants extended consideration.

His first claim – that this Court failed to address his complaints, including his pro se motion, concerning his counsel – has previously been ruled on by this Court and by the Court of Appeals. See Lipscomb, 2006 WL 1549106 at *2, aff'd, 539 F.3d at 41. Lipscomb may not re-assert that claim in this § 2255 proceeding. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967))).

Similarly, Lipscomb's claim concerning the prosecutor's failure to correct false testimony by police and other witnesses is devoid of merit. It has long been established that minor discrepancies in

testimony by law enforcement or other witnesses do not amount to perjury, <u>United States v. Tavares</u>, 93 F.3d 10, 14 (1st Cir. 1996) ("Inconsistent testimony by itself does not amount to perjury."); <u>United States v. Gary</u>, 74 F.3d 304, 314 (1st Cir. 1996 ("[I]t is axiomatic that inconsistent testimony is not *per se* perjurious."), and that the jury may resolve discrepancies in testimony. <u>United States v. Ayala-Garcia</u>, 574 F.3d 5, 12, 15 (1st Cir. 2009) ("The question we must answer is whether the jury's verdict is supported by 'a plausible rendition' of the evidence taken as a whole.").

Here, the jury chose to believe the officers' testimony and, as noted above, the discrepancy in testimony concerning the license plate number was a collateral issue that did not impact his guilt or innocence.

E.   Motion to Amend

Lipscomb has also filed a motion to amend his motion to vacate (ECF No. 176), seeking to add two new claims that: (1) his trial counsel operated under a conflict of interest because, according to Lipscomb, he pursued a defense strategy (focusing primarily on Count I in an effort to disprove intent to distribute) which differed from the strategy urged by Lipscomb (to vigorously oppose all three Counts); and (2) this Court failed to address his <u>pro se</u> motion for new counsel.

These are not new claims at all, but a re-hashing of claims and arguments presented in Lipscomb's initial motion to vacate. Because

those claims and arguments have been addressed and rejected herein, <u>see</u> <u>supra</u> note 9, adding the proposed new claims would be an exercise in futility. <u>See</u> <u>Muskat v. United States</u>, 554 F.3d 183, 195-96 (1st Cir. 2009) ("The law is settled that futility is a sufficient basis for denying leave to file an amended complaint." (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962))). Accordingly, the motion to amend must be denied.

This Court has considered all of Lipscomb's other arguments and finds them to be without merit.

Conclusion

For all of the foregoing reasons, Lipscomb's motion to vacate is hereby DENIED and DISMISSED. His motion to amend his motion to vacate (ECF No. 176) is likewise DENIED.

<u>RULING ON CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Lipscomb has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Lipscomb is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> § 2255 Rule 11(a).


SO ORDERED:

<u>/s/ William E. Smith</u>
William E. Smith
United States District Judge
Date: February 25, 2011